**SEABORN HEALTH CARE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–110C.**

United States Court of Federal Claims.

March 11, 2003.

---

James Ganther, Tampa, Florida, for plaintiff.

Thomas D. Dinackus, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C.; with whom on briefs were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Assistant Director, for defendant.

### Order

SYPOLT, Judge.

On January 21, 2003, plaintiff filed a complaint for injunctive and declaratory relief, requesting, *inter alia*, that the court enjoin the Department of Veterans Affairs (VA) from accepting final proposal revisions in response to Amendment No. 3 to RFQ (Request for Quotations) No. 247–008–03, and direct the VA to re-evaluate all offers in the competitive range pursuant to Amendment No. 2 to the RFQ. On January 31, 2003, at the order of the court, plaintiff filed a motion for a preliminary injunction requesting the same relief. For the reasons discussed, plaintiff's motion is denied. *See* Order of March 5, 2003 (denying motion without reasons).

### Facts

The following facts are taken from the administrative record filed by the government in accordance with the bid protest procedures at Appendix C to the Rules of the United States Court of Federal Claims. The material facts are undisputed.

On July 12, 2002, the VA issued RFQ No. 247–0008–03 for the services of three phlebotomists at the VA Greenville Outpatient Clinic in Greenville, South Carolina, for a one-year performance period and four option years. AR at 1–38.

Plaintiff submitted a response to the RFQ on August 13, 2002. On the same day, the VA informed plaintiff that it had submitted the apparent low quote and asked for the qualifications of its proposed personnel. Plaintiff provided these. At the same time, two other low quoters, including Supplemental Medical Services, Inc. DBA/StaffLink

(StaffLink), received identical notices and requests for personnel qualifications.[1]

By a notice of award dated September 12, 2002, the VA informed plaintiff that award had been made to StaffLink because it submitted "the best terms from a price and technical standpoint." AR at 150. On September 16, 2002, plaintiff requested a telephone debriefing. AR at 141. The next day, the contracting officer told plaintiff by telephone, reiterating by letter, that plaintiff's personnel candidates were acceptable, that award was based on StaffLink's lower base-year price, and that only base-year price was considered. AR at 143. She enclosed abstracts of the thirteen quotations received, which revealed that plaintiff's price in fact was lower than StaffLink's when option prices were factored in. AR at 70—88.

On September 20, 2002, plaintiff filed a protest with the contracting officer, claiming that the award to StaffLink was improper because the RFQ failed to state that award would be based on the lowest base-year price or that option-year prices would not be considered. It also challenged sending "low offer" letters to more than one vendor.

The VA wrote, on September 23, 2002,[2] that the acquisition was conducted pursuant to Parts 12 (Commercial Items) and 13 (Simplified Acquisitions) of the Federal Acquisition Regulations (FAR)[3] and stated, thus that the debriefing process under FAR § 15.506 was not applicable, pursuant to FAR § 13.106–3(d); that award notices were sent as a courtesy; that the evaluation methodology was not changed at any time; that evaluation criteria were not required under FAR Part 13; and that award was made, in accordance with FAR Parts 12 and 13 procedures, to the offeror providing the best terms from a price and technical standpoint.[4] The VA declined to suspend contract performance because the services involved direct patient care and were urgently needed. AR at 151–52.

Nevertheless, on September 25, 2002, the VA ordered StaffLink to suspend contract performance in accordance with FAR § 33.103(f)(3), AR at 153, and the next day issued RFQ Amendment No. 2, which stated:

> [The] [s]olicitation ... is hereby amended to state the basis for contract award in accordance with FAR Part 13.106–1(a)(2). The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors will be used to evaluate offers: 1. Personnel Qualifications; 2. Past Performance; 3. Price (including options).

AR at 154.

Amendment No. 2 also stated that the VA would re-evaluate the basis for its prior award, but that the amendment did not constitute a change to the statement of work and, therefore, to prices, and that the VA would not accept revised pricing. *Id.*

---

1. A September 17, 2002 letter from the contracting officer to plaintiff indicates that "personnel qualification statements were requested from the three lowest quoters," but the administrative record does not identify the third quoter. AR at 143.

2. Plaintiff's counsel states that he first saw the response, allegedly received on January 27, 2003, in the administrative record He suggests no reason for the delay.

3. The Federal Acquisition Regulations (FAR) are codified at title 48 of the Code of Federal Regulations. Section references in this opinion are to those provisions in effect when the RFQ was issued in July, 2002.
   FAR Part 13 contains the policies and procedures for the acquisition of supplies and services valued below the simplified acquisition threshold set by 41 U.S.C. § 403(11) (2003) (now $100,000). See Federal Acquisition Streamlining Act of 1994, Pub.L. No. 103–355 § 4001, 108 Stat. 3243, 3338 (1994). FAR subpart 13.5 authorizes a test program for the use of the Part 13 procedures for acquisitions of commercial items at a dollar value not in excess of $5 million. FAR § 13.003(a) requires agencies ("shall") to use these procedures for "all" purchases not exceeding the threshold "to the maximum extent practicable." FAR § 13.500(b) states that agencies "must" use the procedures authorized by the test program "to the maximum extent practicable."

4. Subpart 13.5 acquisitions of commercial items are also subject to the procedures under FAR Part 12 (Commercial Items). See FAR 13.500(c).

On October 22, 2002, the VA sent StaffLink a notice of termination for the convenience of the government. AR at 155. (StaffLink apparently did not receive this notice, however, until November 1, 2002.) The notice stated that the solicitation should have disclosed the basis for award "by listing the evaluation points and also addressing if option years would be evaluated." *Id.* It also stated that re-evaluation of offers by total aggregate amount, (base plus four option years) indicated that plaintiff, not StaffLink, submitted the lowest offer, and set out plaintiff's prices for each year, including the option years, in tabular form. *Id.*

On November 12, 2002, StaffLink filed a protest of its termination with the General Accounting Office (GAO), *StaffLink,* B–291671 (Dec. 26, 2002), requesting that the GAO direct the VA to award the contract to StaffLink or, alternatively, to communicate the evaluation criteria to all competitors and to allow reopening of the solicitation and submission of revised best and final offers. AR at 158–60.

The VA informed the GAO on December 12, 2002 that the following corrective measures would be taken: review of the solicitation provisions and evaluation criteria to ensure that they were consistent with its needs; amendment of the solicitation as necessary; consideration of proposal revisions from the interested parties; rendering a source selection decision consistent with the terms of the solicitation; and correcting the source selection decision if necessary. AR at 174–75. Based on this corrective action, the GAO dismissed StaffLink's protest as "academic." *StaffLink,* B–291671 (Dec. 26, 2002) (citing *Dyna–Air Eng'g Corp.,* B–278037, Nov. 7, 1997, 97–2 CPD ¶ 132, 1997 WL 692915).

On January 7, 2003, the VA issued RFQ Amendment No. 3, which stated that "[r]evised pricing/technical proposals will be accepted for re-evaluation for contract award in accordance with the award basis reflected in Amendment No. 2." AR at 177–78. It also set a proposal due date of January 22, 2003, and reiterated the evaluation factors set out in Amendment No. 2: personnel qualifications, past performance, and price (including options). *Id.* Amendment No. 4 postponed until February 24, 2003, the date for submission of revised pricing/technical proposals. AR at 179–80. The contracting officer postponed the due date until March 3, 2003.

### *Jurisdiction/Standard of Review*

This court's current jurisdiction over pre-award bid protests [5] is founded on the Administrative Dispute Resolution Act, Pub.L. No. 104–320, 110 Stat. 3870 (1996) (codified at 28 U.S.C. § 1491(b)(1)). Pre-award bid protests are subject to the standard of review prescribed in section 10(e) of the Administrative Procedure Act (APA), 60 Stat. 243 (1946), (codified at 5 U.S.C. § 706(2)(A) (1994)). *See* 28 U.S.C. § 1491(b)(4) (Supp. IV 1998). Under the APA, 5 U.S.C. § 706(2)(A), a court must hold unlawful and set aside agency action, findings and conclusions, found to be, *inter alia,* "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See JWK Int'l Corp. v. United States,* 279 F.3d 985, 987 (Fed.Cir.2002).

A contracting agency's action will not be found to be "arbitrary and capricious" if the agency "provided a coherent and reasonable explanation of its exercise of discretion." *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1333 (Fed.Cir.2001) (citations omitted). "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989) (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir. 1971)).

To prevail on its claim for injunctive relief, plaintiff must demonstrate: (1) that it is likely to succeed on the merits of its claim; (2) that it will suffer irreparable harm if the

---

5. This is a pre-award protest because the VA terminated its initial award decision under the RFQ, and amended the RFQ with the intention of making a new award decision, and plaintiff now challenges the terms of the amended RFQ.

procurement is not enjoined; (3) that the balance of hardships weighs in its favor; and (4) that a preliminary injunction will not be contrary to the public interest. *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir. 1993). An inadequate showing with regard to any one factor may justify denying injunctive relief. *Id.*

The United States Court of Appeals for the Federal Circuit repeatedly has cautioned that "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Technology,* 995 F.2d 1566, 1568 (Fed.Cir. 1993) (citations omitted).

### *Discussion*

Plaintiff claims that the RFQ was not conducted, as the VA claims, under the simplified acquisition procedures of FAR Part 13; that the VA failed to disclose that it was using Part 13 procedures; and, therefore, that the procedures of Part 15, the standard procedures for negotiated procurements, should apply.

Plaintiff also challenges Amendment No. 3 for: allowing offerors to submit revised quotations; failing to include a mandatory provision disclosing whether options will be included in price evaluations; and inadequately describing how the personnel qualifications and past performance evaluation criteria will be applied.

### *Improper Reliance on Part 13*

Plaintiff does not dispute the authority of the VA to conduct this acquisition pursuant to FAR Part 13 (or, since the $100,000 simplified acquisition threshold is exceeded by this procurement, pursuant to subpart 13.5), but maintains that it did not in fact do so, or disclose that it was doing so, and that its failure to disclose its reliance on Part 13 requires that the "more stringent" requirements of FAR Parts 15 and 17 should be applied. However, plaintiff does not specify how it was prejudiced by the VA's failure to disclose its reliance on Part 13 authority or to follow any FAR Part 15 and 17 requirements, including the few requirements it specifically discusses.

Plaintiff contends that failure to mention that FAR Part 13 procedures were being applied to a "procurement" indicates that it was not conducted pursuant to FAR Part 13, and that it must be subjected to Part 15 and 17 requirements, citing *Dubinsky v. United States,* 43 Fed.Cl. 243 (1999).

In *Dubinsky,* however, a decision not binding on this court, the court's conclusion was based on highly-distinguishable facts, including a written determination by the contracting officer that the procurement was conducted under authorities other than FAR Part 13; negative credibility assessments of the contracting officer; issuance of the solicitation as an RFP, not an RFQ; a Part 15 competitive range determination (these are not performed in Part 13 acquisitions); other references to Part 15; and no mention of Part 13 in the agency's bid protest response to the GAO, or before an evidentiary hearing in court.

Here, the solicitation was identified as an RFQ; the contracting officer expressly stated, in a September 23, 2002 letter responding to plaintiff's protest, that the acquisition was conducted pursuant to FAR Part 13; and Amendment No. 2 included a statement that the solicitation was amended in accordance with FAR Part 13.106–1(a)(2). AR at 1, 151–52, 154. Thus, the offerors were on notice that the acquisition was being conducted pursuant to FAR Part 13.

Plaintiff also argues that issuance of the current solicitation on Standard Form (SF) 1449, not on SF 18(RFQ), demonstrates that the VA did not conduct the procurement pursuant to FAR Part 13, because RFQs are "the predominant solicitation format" in Part 13, and that several solicitation references to competitors as "offerors," as opposed to "quoters," similarly indicate that the acquisition was not conducted under Part 13.

While it is technically correct that the term "offeror" does not apply to those responding to an RFQ, plaintiff itself recognizes, nevertheless, that Part 13 "does not preclude the use of RFPs," though they are used less frequently. Furthermore, the SF 1449 contained a choice of boxes labeled: "RFQ," "RFP," or "IFB." AR at 1. The contracting officer selected "RFQ."

Similarly, plaintiff argues that, because the solicitation instructions to submit the information required by FAR § 52.212–1 Instructions to Offerors–Commercial Items, AR at 2, 24, and the issuance of the solicitation on SF 1449, Solicitation/Contract/Order for Commercial Items, both indicate that FAR Part 12 (Commercial Items), not Part 13, were used, this is not a Part 13 acquisition.

This is incorrect. FAR § 13.500(c) expressly requires the utilization of Part 12 procedures in situations such as this: "when acquiring commercial items using the procedures in this part, the requirements of part 12 apply ... includ[ing] use of the provisions and clauses in subpart 12.3." FAR § 12.301(b)(1), in turn, requires contracting officers to insert FAR § 52.212–1 Instructions to Offerors for Commercial Items in solicitations for commercial items. Thus, the commercial items requirements were required by Part 13, the FAR part relied upon by the VA.

As to the government's self-described "acceptance" of StaffLink's quote, see AR at 90, as "proof positive" that the solicitation was not a request for quotations because the government has no power to accept quotations,[6] defendant concedes that "it was in error for the contracting officer to purport to 'accept' the quotes submitted by StaffLink." After considering all of the circumstances of this acquisition, this statement appears to be an error or misunderstanding, not an indication of the VA's intent that this be other than a Part 13 acquisition.[7]

Finally, plaintiff claims that the fact that Part 13 was not intended to be used, or its use disclosed, is evidenced by the contracting officer's failure to comply with FAR § 13.501(b)(1) and (3), which require the contract file to include a brief written description of the procedures used in awarding the contract, including the fact that the test procedures in FAR subpart 13.5 were used, and an explanation, tailored to the size and complexity of the acquisition, of the basis for the contract award decision.

Defendant supplemented the administrative record, however, by leave of the court, on February 12, 2003, with the contracting officer's summary of the award to StaffLink. This summary substantially complies with the requirements of FAR § 13.501(b), by identifying the procedures used in awarding the contract, the number of offers received, and the basis for the award (as "in the best interest of the government"), in accordance with FAR 13.106–3. It does not, however, include a statement that the test procedures of FAR subpart 13.501 were used. Plaintiff has not responded to this supplemental filing, despite having had ample time to do so.

Given that the regulations require agencies to use the simplified procedures provided by FAR Part 13 (and subpart 13.5) for acquisitions to the maximum extent practicable; that the face of the solicitation shows that it was issued as an RFQ; that an RFP format may be used in FAR Part 13 solicitations; that the VA revealed that it was using FAR Part 13 procedures in Amendment No. 2 and in its response to plaintiff's agency protest; that the contracting officer substantially complied with the documentation requirements of a FAR Part 13 procurement, and that Part 12 commercial items forms are required by Part 13, the court is not persuaded by plaintiff's arguments that the VA did not conduct the procurement pursuant to FAR Part 13 or that the VA inadequately disclosed that it was basing the procurement on FAR Part 13.

Moreover, plaintiff has not demonstrated that the failure to use Part 13 procedures requires the application of Part 15 proce-

6. A quotation in response to an RFQ, which is provided for only by the simplified acquisition procedures in FAR Part 13, unlike a proposal in response to an RFP ("request for proposals") under FAR Part 15, does not give the government the power of acceptance, but only the power to make an offer that, in turn, may be accepted by the vendor, at its option. See FAR § 13.004(a).

7. Plaintiff's request for a debriefing also was based on the misunderstanding that this was a Part 15, rather than a Part 13, acquisition. Pre- and post-award debriefings are required (upon request) by FAR §§ 15.505 and 15.506, respectively, and are not required by Part 13. FAR Part 13, see FAR § 13.106–3(d), merely provides that, upon request, contracting officers shall provide "information," "a brief explanation of the basis for the contract award decision."

dures. And plaintiff has shown no prejudice from any of the alleged lapses regarding the use or disclosure of Part 13 applicability that could be remedied by use of Part 15 or 17 procedures, so as to require the relief requested by plaintiff here, especially when plaintiff appears to concede that any errors committed in the original RFQ were remedied in Amendment No. 2 (the Amendment plaintiff seeks to enforce) and thus, necessarily, in Amendment No. 3 (the amendment plaintiff would enjoin) as well.

### Non–Disclosure of Option Evaluations

Plaintiff argues that the RFQ is deficient because, as a procurement covered by Parts 15 and 17, it is required by FAR §§ 17.203 and 17.208 [8] to include a provision such as FAR § 52.217–5 [9] (stating whether price proposal evaluations will include options). However, even if FAR Parts 15 and 17 applied, FAR Part 13, the authority utilized in this acquisition, also clearly would require agencies to comply with FAR § 17.208. See FAR § 13.106–1(e) (providing that an agency may evaluate options if it meets the requirements of FAR subpart 17.2).

Clearly, the VA did not comply, initially, with FAR subpart 17.2, since the RFQ provided for the exercise of options and required the submission of option prices, but failed to state whether options would be included in price evaluations. Thus, the contract award to StaffLink, based on the base-year price only, was in error.

The VA corrected this error, however, by terminating StaffLink's award and issuing Amendment No. 2 informing offerors that price evaluation would include all options, as required by FAR subpart 17.2. Plaintiff does not challenge the unamended RFQ, or even Amendment No. 2. Since Amendment No. 3 contains the same language, this challenge is moot.

### Propriety of Requesting Revised Quotations

While plaintiff expends substantial effort in analyzing whether the solicitation was issued pursuant to the simplified acquisition procedures in FAR Part 13, plaintiff's main challenge to the RFQ relates to "the contents and impact" of Amendment No. 3, plaintiff requesting that the procurement proceed under the terms of Amendment No. 2.

Again relying on its contention, which the court has rejected, that FAR Part 15 negotiated procurement procedures apply, plaintiff argues that FAR § 15.307(b) bars the government from seeking revised proposals or quotations, unless it first holds discussions with the competitors, which the VA has declined to do.

Plaintiff, however, misreads FAR § 15.307(b), which states: "the contracting officer may request or allow proposal revisions to clarify and document understandings reached during negotiations. At the conclusion of discussions, each offeror still in the competitive range shall be given an opportunity to submit a final proposal revision."

This FAR Part 15 negotiated procurement requirement, even if it applied to an acquisition under FAR Part 13, merely identifies what the government must do *once discussions have taken place*. It does *not* set restrictions on issuing a revised solicitation or prohibit an agency from obtaining revised quotations or proposals without discussions.

Moreover, the solicitation here, as permitted by FAR Part 13, specifically provides that award *will* be made without discussions. See FAR § 13.106–2(b)(2) (discussions not required). In fact, quotes may be submitted even after the closing date in FAR Part 13 acquisitions, because the emphasis under this part is on flexibility and discretion, not formal requirements. See *RMG Industrial Sales*, B–281632, Mar. 15, 1999, 99–1 CPD

---

8. FAR § 17.203(a) states: "Solicitations shall include appropriate option provisions and clauses when resulting contracts will provide for the exercise of options (see FAR § 17.208)." FAR § 17.208(c) states that a contracting officer must "[i]nsert a provision substantially the same as the provision at 52.217–5" when options are included in a solicitation.

9. According to FAR § 52.217–5, except when determined not to be in the best interest of the government, "the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement."

¶ 58, at 3, 1999 WL 140172 (citation omitted); *see also*, FAR § 13.002 ("The purpose of [FAR Part 13] is to ... '(a) reduce administrative costs; ... (c) promote efficiency and economy in contracting; and (d) avoid unnecessary burdens for agencies and contractors' "); FAR § 13.106–2(b) ("The contracting officer has broad discretion in fashioning suitable evaluation procedures").

The VA's decision to permit the submission of revised "pricing/technical proposals," as provided in Amendment No. 3, was not unreasonable; it was essential to correct the problems with the original acquisition and to permit the quoters to respond to the revisions in Amendment No. 2 to correct those problems, and make additional improvements to the procurement. Amendment No. 2 was necessary because the RFQ was defective, in that it failed to identify whether option year prices would be included in price evaluations. *See Golden North Van Lines, Inc.*, B–238874, July 17, 1990, 90–2 CPD ¶ 44, at 3–4, 1990 WL 293703 (finding solicitation that failed to state whether prices would be evaluated with or without options, was materially defective and "not a proper vehicle for award").

Amendment No. 2 (as the agency may do if it changes its requirements or terms or conditions, even under the more formal procedures in Part 15, *see* FAR § 15.206) added several evaluation factors not contained in the RFQ:

The Government will award a contract from this solicitation to the responsive, responsible offeror whose offer *conforming to the solicitation* will be most advantageous to the Government, price and other factors considered. The following factors will be used to evaluate offers: 1. Personnel Qualifications. 2. Past Performance. 3. Price (including options).

The original RFQ merely instructed offerors that "the offeror's initial offer should contain the offeror's best terms from a price and technical standpoint .... The Government may ... accept other than the low offer." AR at 25.

Because Amendment No. 2 did not permit offerors to submit revised quotations to respond to the new evaluation factors, after StaffLink's GAO protest, the VA concluded

that additional corrective measures were required, and issued Amendment No. 3, allowing offerors to submit revised pricing/technical proposals. AR at 178.

In taking corrective action to ensure a fair competition, contracting officers are afforded broad discretion. *See Omega World Travel, Inc. v. United States*, 54 Fed. Cl. 570, 574 (2002) ("Contracting officers are entitled to broad discretion to take corrective action if they determine 'that such action is necessary to ensure fair and impartial competition' ") (quoting *DGS Contract Serv., Inc. v. United States*, 43 Fed.Cl. 227, 238 (1999)). As long as a decision to amend a solicitation and request revised offers is made in good faith, without the intent to change a particular offeror's ranking or to avoid an award to a particular offeror, that decision will not be disturbed. *Mantech Telecommunications & Information Systems Corp. v. United States*, 49 Fed.Cl. 57, 73 (2001), *aff'd* 30 Fed.Appx. 995 (Fed.Cir.2002) (citations omitted). There is no allegation or evidence of bad faith in this case.

When the government fundamentally changes a solicitation to alter how price or offers are to be evaluated, the competitors must be given the opportunity to respond, so that the government may obtain the most advantageous offer. *See MVM, Inc. v. United States*, 46 Fed.Cl. 137, 145 (2000) (requiring agency to amend solicitation and seek new best and final offers due to changed requirements); *Occu–Health, Inc.*, B–270228.3, Apr. 3, 1996, 96–1 CPD ¶ 196, 1996 WL 196654 (sustaining protest and recommending that agency take corrective action by amending solicitation to notify offerors that option prices would *not* be evaluated and allowing for the submission of revised proposals); *Dep't of Commerce–Request for Modification of Recommendation*, B–283137.7, Feb. 14, 2000, 2000 CPD ¶ 27, at 2–4, 2000 WL 175100 (offerors must be given opportunity to respond to revised solicitation in negotiated procurement).

In this case, Amendment No. 2 was necessary to correct the erroneous failure to specify whether prices would be evaluated to include options. This change, significantly

affecting how offerors priced their quotes, would justify seeking revised quotations. *See Occu–Health, supra.* The other changes in Amendment No. 2, specifically, two new evaluation factors-personnel qualifications and past performance, also significantly altered the basis for an award decision (and for preparation of quotations), and justified the contracting officer's exercise of her discretion to request revised offers.

### Adequacy of New Evaluation Factors

Plaintiff argues that Amendment No. 3 is flawed because the new evaluation factors are vague and do not comply with FAR § 13.106–1(a)(2).[10] It claims that the amendment does not contain sufficient guidance with respect to the evaluation of past performance, such as whether it will be considered: "only with respect to phlebotomy contracts? Or contracts of similar size and complexity? Or contracts of greater scope and dollar value? [and] How far back will the VA will look?" Plaintiff alleges that the personnel qualifications factors suffer from the same deficiencies and are set forth as "go/no-go" factors not amenable to an adjectival rating.[11]

Plaintiff compares this case to *SKJ & Associates, Inc.,* B–291533, 2003 WL 115209, 2003 U.S. Comp. Gen. LEXIS 5 (2002), a decision not binding on this court, which is distinguishable because the solicitation did not state how the factors would be evaluated or instruct the offerors to include any specific information in their proposals concerning the non-price factors, whereas the RFQ issued by the VA here requires offerors to submit detailed information pertaining to the past performance and personnel qualification evaluation factors.

Contrary to plaintiff's contentions, FAR § 13.106–1(a)(2) requires very little detail concerning the factors governing award, and, on the contrary, clearly discourages quantification and precision: "solicitations

are not required to state the relative importance assigned to each evaluation factor and subfactor, nor are they required to include subfactors." This standard appears to be consistent with the purposes of the simplified acquisition procedures.

Moreover, Amendment No. 3 is not silent on how past performance will be evaluated; it requires the submission of additional, new information: "to include recent and relevant contracts for the same or similar items and other references (including contract numbers, points of contact with telephone numbers and other relevant information)." AR at 24. This plainly indicates that the VA will evaluate past performance based upon recent contracts for the same or similar items.

Plaintiff's contention that the personnel qualification standards are set out on a "go/no-go" basis is unsupported. These state that personnel must have at least 24 months experience or a national or state-recognized certification, that letters of recommendation must be submitted for personnel, and that personnel must represent an acceptable malpractice risk. These factors evidence that the VA may make comparative, graded evaluations and rankings, and may rate more highly those offerors whose employees are more experienced, or more highly recommended, or represent a lower malpractice risk. These considerations clearly may not be applied merely as "go/no-go," up-or-down factors.

### Improper Price Disclosure

Plaintiff's complaint asserts that the VA disclosed its prices to another offeror (StaffLink) without first obtaining consent and that this action was improper and not in accordance with applicable law and regulation. Plaintiff's motion for a preliminary injunction, however, does not explain what was improper about the alleged disclosure, e.g.,

10. FAR § 13.106–1(a)(2) states:
   When soliciting quotations or offers, the contracting officer shall notify potential quoters of offerors of the basis on which award will be made (price alone or price and other factors, e.g., past performance and quality). Contracting officers are encouraged to use best value. Solicitations are not required to state the relative importance assigned to each evaluation

factor and subfactor, nor are they required to include subfactors.

11. Plaintiff alleges, on information and belief, that plaintiff and StaffLink tendered the resumes of the same phlebotomists. However, since they are unlikely to be the only competitors and personnel factors are not the only evaluation factors under Amendment No. 3, this is not relevant.

 

what procurement law or regulation was violated.

Plaintiff asserts that it will be irreparably harmed by StaffLink's knowledge of its prior quoted prices because it will have to reduce its price in the new round of quotation. According to plaintiff, if it were to obtain an award, "it would inevitably be at a lower price than originally offered," thereby reducing its potential for profit. Plaintiff's Motion at 10. In alleging that this constitutes irreparable harm, plaintiff relies on *Overstreet Electric Company, Inc. v. United States,* 47 Fed.Cl. 728 (2000). In *Overstreet,* however, the award was to be made to the lowest negotiated price, whereas Amendment No. 3 permits consideration of factors other than price, thus, even if its prior price is undercut, plaintiff nonetheless might receive the award at a higher price based on the other factors.

*Balance of Hardships/ Public Interest*

■ Plaintiff's contentions that the balance of hardships is in its favor—because the VA may obtain the phlebotomy services by short-term contracts if the injunction is granted, and the public interest will be served by conducting the procurement in accordance with applicable laws and regulations—are generalized, conclusory statements that could be made in a large proportion of protest cases. It alleges no extraordinary injury.

Under these circumstances, plaintiff's failure to demonstrate that it is likely to succeed on the merits of its protest precludes granting injunctive relief: "Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown." *FMC Corp.,* 3 F.3d at 427.

### CONCLUSION

Because, for the foregoing reasons, plaintiff has not demonstrated that it is likely to succeed on the merits of its claim that the agency acted arbitrarily, capriciously, or contrary to law in conducting this solicitation, plaintiff's motion for a preliminary injunction to prevent the VA from accepting final proposal revisions in response to Amendment No. 3 to the RFQ has been denied. *See* Order of March 5, 2003.