**MVM, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Akal Security, Inc., Intervenor.**

**No. 99–137C.**

United States Court of Federal Claims.

Filed Under Seal Nov. 18, 1999.

Redacted and Modified for Publication on Feb. 22, 2000.*

---

* After deciding this case, the Court allowed some time for the parties to suggest redactions. The Court has incorporated many of the suggested redactions, which are noted by brackets. In other places, the Court has rejected the proposed redactions because the language concerned parts of the opinion that was fundamental. If the language were redacted, the opinion would be incomprehensible.

In addition, while the decision was sealed, Akal filed a motion to vacate the decision under RCFC 60(b). The Court considered this motion in light of *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25, 115 S.Ct. 386, 391–92, 130 L.Ed.2d 233 (1994); *In re United States*, 927 F.2d 626, 628 (D.C.Cir.1991) and *MAPCO Alaska Petroleum, Inc. v. United States*, 30 Fed.Cl. 153 (1993). The Court denied this motion primarily because the public may have some interest in the decision. First, offerors within the competitive range that are not parties received a benefit in that they are eligible to compete for the contract on resolicitation. Second, the Court hopes that its decision will prevent errors in the future.

For these reasons, the time between when the decision was issued under seal and when the redacted decision was released to the public was somewhat longer than usual.

James S. Phillips, Vienna, Virginia, for plaintiff. James S. DelSordo, Vienna, Virginia, of counsel.

James C. Caine, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, with whom were Kathryn A. Bleecker, Assistant Director; David M. Cohen, Director; and David W. Ogden, Acting Assistant Attorney General. C. Joseph Carroll, U.S. Marshals Service, Arlington, Virginia, of counsel.

Donald E. Barnhill, San Antonio, Texas, for intervenor. Joan K. Fiorino and Edgar Garcia, San Antonio, Texas, of counsel.

## OPINION AND ORDER

DAMICH, Judge.

### I. Introduction

After a trial on the merits, pursuant to Rules of the Court of Federal Claims (R.C.F.C.) 52(a), the Court concludes that the Plaintiff has established prejudice in connection with the failure of the United States Marshals Service (hereinafter "the agency") to comply with FAR 15.206. Accordingly, the Court orders the agency to amend the solicitation and to resolicit bids for this contract.

### II. Background Facts

#### A. Solicitation and Award

Previously, the Court denied motions for summary judgment filed by MVM (the Plaintiff), the United States (the Defendant) and Akal (the Intervenor). The decision on these motions provides the background facts for this litigation; a familiarity with that decision is necessary to understand fully this decision. The following outline, however, is provided for convenience.

The agency issued a solicitation for Courthouse Security Officers in the Eleventh Circuit. The Eleventh Circuit has nine judicial districts, including the Northern District of Florida. The solicitation alerted the prospective bidders that the agency might eliminate the Northern District of Florida to set it aside as reserved for a small business.

Before the bidders submitted their Best and Final Offers ("BAFOs"), the agency orally informed the bidders that it "anticipate[d]" removing the Northern District of Florida. Significantly, the agency did not amend the solicitation. The bidders complied with the solicitation requirement that they offer a price for the total contract, encompassing the nine districts, and that they list their price for each of these districts.

After receiving the BAFOs, the agency decided to eliminate the Northern District of Florida. To accomplish this deletion, the Contracting Officer (CO) subtracted the figure that the bidder proposed as the cost for the Northern District of Florida from the figure the bidder proposed as its total bid. The CO then compared prices. After the CO's subtraction, Akal had a lower price than MVM. The CO awarded the contract to Akal. The determinative factor appears to be that Akal offered a lower price for eight districts than did MVM.[1]

#### B. Court Action

In its ruling on the cross-motions for summary judgment, the Court determined, as a matter of law, that the agency violated FAR 15.206. The Court held that because the agency changed the scope of the solicitation before awarding the contract, the agency should have issued an amendment to the solicitation.

■ But a violation in procurement law does not entitle the Plaintiff to relief; the Plaintiff also must establish prejudice. The Court found a genuine dispute over whether the Plaintiff was prejudiced. In this regard, conflicting affidavits from experts confronted the Court. According to the standards of ruling on cross-motions for summary judgment, the Court was forced to accept as true the affidavit submitted by the non-moving party. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed.Cir.1998). The Court, therefore, denied all motions for summary judgment.

#### C. Procedural Posture

As explained in its previous decision and as described in significantly more detail below, a single issue remains in this case: whether MVM was prejudiced by the agency's failure to amend the solicitation. The Court addresses this question by examining whether the form of Akal's bid accounted for the removal of the Northern District of Florida. The Court permitted the parties to supplement the Administrative Record to present expert affidavits on this issue.

Soon after oral argument on the parties' cross-motions for summary judgment, the Court concluded that the factual dispute be-

---

1. In addition to price, the agency evaluated the offerors' technical proficiency and past perfor-

mance. MVM and Akal had essentially the same scores in these other areas.

tween the experts would preclude summary judgment for either the Plaintiff or the Defendant/Intervenor. The Court held a status conference to alert the parties to its decision and to propose that the Court conduct a "paper trial." After further discussions between the parties, they agreed to this procedure.[2]

A paper trial resembles a ruling on motions for summary judgment yet it additionally allows the Court to resolve issues of fact.[3] The parties agreed that the Court would consider the affidavits of both experts that had been filed in support of the motions for summary judgment. The parties were also given an opportunity to submit simultaneously a "rebuttal affidavit" from their expert. Finally, the Court permitted the parties to file a written two-page closing argument.

At both the status conference and in its written order, the Court informed the parties that it would make findings of fact pursuant to R.C.F.C. 52(a), not R.C.F.C. 56.

### III. Findings of Facts Concerning Akal's Bid and Prejudice to MVM

The Court finds that Akal's bid included fixed costs as part of its "fully burdened rates" for the Northern District of Florida. Because these costs are "fixed," they should have been distributed over the remaining eight districts and not subtracted from the contract. Accordingly, the Court finds that MVM has established that there was a "substantial chance" that "but for" the agency's failure to amend the solicitation it would have received the award. *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999).

The Court agrees with the analysis made by the Plaintiff's expert, Terry A. Carlson. The Court finds that Akal treated certain expenses, the General & Administrative ("G & A") and Other Direct Costs ("ODC") as fixed items when preparing its bid for the Eleventh Circuit, including the Northern District of Florida.

The Court finds that Akal treated these two categories as fixed quantities that were apportioned over the entire job. The Court bases its finding on a review of Akal's bid, which is contained in the Administrative Record. In its bid, Akal stated that it treated [certain items] as ODCs. Its bid also states [how it priced ODCs]. *See, e.g.,* AR, Vol. 15, Tab 39, page 6163. Thus, indirect General & Administrative costs were allocated for the [* * *] contract to the Eleventh Circuit generally.

The Court finds the analysis of Akal's expert, Peter A. McDonald, to be less credible. McDonald contends that G & A and ODC varied proportionally with the amount of labor expended. Under McDonald's approach, when the Northern District of Florida was eliminated, the G & A and ODC associated with the Northern District of Florida would also be eliminated. McDonald ignores the fixed nature of some costs.

For example, Akal must incur certain expenses related to operating a business, such as the expense of maintaining or renting the property where Akal's offices are located and the expense of paying a salary to certain officers. These expenses exist whether or not Akal received the contract and the expenses exist whether the contract, assuming it was awarded to Akal, had eight districts or nine districts.

---

2. Without the agreement of the parties, the Court would not have conducted this paper trial. The Court applauds the efforts of all counsel to reach this agreement and encourages other parties to consider this method of resolving litigation.

Here, a paper trial is appropriate. First, the in-person testimony of the expert witness would have added little or no additional information because the credibility of the witness is not challenged. Each expert witness based his opinion on Akal's bid, which is part of the Administrative Record before the Court. Guided by the experts' opinions, the Court will interpret Akal's bid.

Second, a trial with witnesses appearing in person would be more expensive and further delay this case. (It appears that one expert could not testify on the day for which trial was originally planned.) Thus, the paper trial presented a less costly and more expeditious method for review.

3. Morton Denlon, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment,* The Federal Lawyer, Aug. 1999, 30–34, describes this procedure in more detail.

These expenses do not vary with the amount of underlying work. Eliminating the Northern District of Florida does not change the expense associated with maintaining the physical office space or paying salaries. Although Akal maintained that its G & A and ODC were completely variable, the Court rejects this contention.[4] Akal did not treat G & A and ODC as completely variable in its bid and the Court will not do so now, despite the *post hoc* justifications offered by Akal.

The flaw in McDonald's reasoning is apparent in another way. McDonald states: "If the [agency] did not purchase a particular direct labor hour, then Akal would not collect the ODCs and G & A associated with that direct labor hour. In other words, Akal chose to make the recovery of ODCs and G & A commensurate with the [agency's] purchase of its direct labor hours." McDonald, Supplemental Affidavit, ¶ 3. McDonald is suggesting that the agency could "purchase" separate direct labor hours. Under McDonald's approach, the agency could have awarded the Southern District of Florida to one offeror and the Middle District of Florida to a different offeror. The solicitation, however, required the agency to award all districts to one offeror, with the exception of the Northern District of Florida. The agency either purchased all the direct labor hours with the associated burdened costs, including ODCs and G & A, or purchased none of the direct labor hours.

The Court finds that when the agency subtracted Akal's price for the Northern District of Florida from its price for all districts, the agency subtracted a number that was too large. This subtraction had the effect of prejudicing MVM.[5]

■ The Court's finding of prejudice is reinforced by the legal standards set out in *Alfa Laval*:

"To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." *Data General [v. Johnson ]*, 78 F.3d [1556] at 1562 [(Fed. Cir.1996)] (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." *Statistica [v. Christopher ]*, 102 F.3d [1577] at 1582 [(Fed.Cir.1996)]; see *CACI, Inc.–Fed. v. United States,* 719 F.2d 1567, 1574–75 (Fed.Cir.1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, " 'there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration' " (citation omitted)).

*Alfa Laval Separation,* 175 F.3d at 1367 (1999). Even if McDonald's approach were accepted (that Akal's ODCs and G & A were *completely* variable), McDonald's assertion still would not eliminate the prejudice. Akal is arguing that MVM was not prejudiced because even if Akal had followed MVM's approach, Akal would have won the contract. MVM, however, does not have to prove that it would have won the contract. As explained in the quotation from *Alfa Laval,* prejudice is established at a level less than the level of "who would have won the contract." In the present case, MVM was "within the zone of active consideration." This showing is all that is required. *Statistica v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir. 1996) (rejecting an argument that "reasonable likelihood" is a higher burden for protesters than "substantial chance").

This case is distinguishable from *Beta Analytics International v. United States,* 44 Fed.Cl. 131, 140 (1999) in which the Court remanded the protest to the agency for the agency to determine whether there was a substantial chance that the protester would have received the award but for the error.

---

4. The Court does note that some portion of G & A and ODC *could* depend, at least in a small part, on the amount of underlying labor. Akal included [a particular element] as one item in ODCs. If Akal [* * *], then it would not have to incur this expense.

Neither party submitted detailed examination of how Akal treated G & A and ODC. Such examination is not necessary because the Court is concerned with determining only whether there was a "substantial chance" that MVM would have received the award.

5. The decision on the motion for summary judgment explains that the agency's error was failing to amend the solicitation after a change in requirements. *See* FAR 15.206.

In *Beta Analytics*, the Court could not determine how the agency would have evaluated the protestor's bid if the agency had followed the mandatory terms of the solicitation. Contrastingly, here the Court determines that MVM was "within the zone of active consideration." This determination is enough to find prejudice.

■ Finally, the Court's finding of prejudice in this case does not contradict the principle that in a fixed-price contract, offerors may propose prices that do not cover all their costs. *See RMS Information Services, Inc.*, B–280521.3, 98–2 CPD ¶ 113, *Am–Pro Protective Agency, Inc. v. MVM Inc.*, B–271385.4, 96–2 CPD ¶ 192. In the present case, it is irrelevant whether Akal's bid for nine districts did or did not cover all its costs. When the agency deleted the Northern District of Florida, it changed the calculus. The agency does not know whether Akal intended to propose a bid for eight districts that did not cover all its costs.[6]

Because MVM has established that there was a violation of procurement law (decided in the motions for summary judgment) and because MVM has established that this violation prejudiced it, the Court will address the remedy for MVM. Remedies are discussed in the next section.

## IV. Injunctive Relief

### A. Elements

■ Although the Plaintiff has prevailed on the merits, it must establish other elements before it is entitled to permanent in-

junctive relief. *See Marine Hydraulics Intern., Inc. v. United States*, 43 Fed.Cl. 664, 671 (1999). These other elements are: (1) will the Plaintiff suffer a specific, irreparable injury, (2) does the harm suffered by the Plaintiff outweigh the harm to the government and third parties, and (3) does granting injunctive relief serve the public interest. *See Vehicular Techs. Corp. v. Titan Wheel Int'l*, 141 F.3d 1084, 1087–88 (Fed.Cir.1998); *Reebok Intern. Ltd. v. Baker*, 32 F.3d 1552, 1555 (Fed.Cir.1994); *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993).

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d at 427.[7]

### 1. Irreparable Injury

■ If the Court does not enjoin performance by Akal, MVM will lose an opportunity to earn the profit that it would have made if the contract had been awarded to it. This loss of profit, for which there is no adequate remedy at law, is accepted as a "specific, irreparable injury" that warrants the entry of an injunction. *See Wetsel–Oviatt Lumber Co. v. United States*, 43 Fed.Cl. 748, 753 (1999) (citing cases); *Informatics Corp. v. United States*, 40 Fed.Cl. 508, 518 (1998); *Logicon v. United States*, 22 Cl.Ct. 776, 789

**6.** It is not a sufficient answer to say that "the agency knows Akal was willing to perform because Akal accepted the agency's offer to perform the contract at a certain price." This rejoinder is insufficient because the agency presented this offer to Akal and no other bidders. In effect, Akal was the only offeror that made an informed choice about bidding on the Eleventh Circuit with eight districts. Thus, the agency did not have the free and open competition required in this government contract.

**7.** Although *FMC Corp.* is discussing a *preliminary* injunction, the Court will apply its statement to whether a *permanent* injunction is appropriate. Circuits addressing this issue have ruled that the standards in awarding a preliminary or perma-

nent injunction are essentially the same. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987); *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir.1999).

On this point, *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed.Cir.1996), is not inapposite. Although *Lermer* indicates that preliminary injunctions and permanent injunctions are different forms of relief, this discussion is within the context of whether the Plaintiff made a proper pleading to request a preliminary injunction. *Lermer* does not indicate that the standards for imposing injunctive relief are different. Instead, *Lermer* recognizes that a trial court may issue a permanent injunction after declining to issue a preliminary injunction.

(1991); *Quality Transp. Servs., Inc. v. United States,* 12 Cl.Ct. 276, 282 (1987); *Essex Electro Engrs., Inc. v. United States,* 3 Cl.Ct. 277, 287 (1983). Neither Akal nor the United States contested this point.[8]

### 2. Balance of Hardships

■ Akal argues that entering an injunction would cause it more harm than the harm suffered by MVM. Akal points to its incurred start-up costs, which presumably are being recovered over the duration of the contract and have not been recovered yet. Akal, however, has not quantified the amount of incurred start-up costs and has not quantified the profit it has made in performing the contract. Accordingly, the Court discounts Akal's argument as unsubstantiated.

Despite Akal's argument, the Court finds that MVM faces a more significant harm than Akal. MVM's loss of an opportunity to compete fairly for the contract that was awarded, a contract to provide guard services for *eight* districts within the Eleventh Circuit, is absolute. Akal's loss of start-up costs is contingent because Akal may eventually be awarded the contract whereby it can recover those costs. *See Stratos Mobile Networks USA, LLC v. United States,* 44 Fed.Cl. 633, 641 (1999).

Therefore, although this point is contested, the Court finds that the harm that MVM would incur if the injunction were not issued is greater than the harm that Akal would incur if the injunction were issued.

### 3. Public Interest

■ Akal argues that the public interest would be served by denying the injunction because MVM should have brought this action earlier. The Court, however, has ruled against Akal on this point. FAR 15.206 requires the government to amend the solicitation when the requirements change. MVM could not raise a challenge before the con-

tract award because it did not know that the requirements changed.

Akal also argues that there is a danger to the public because removing Akal from the contract could disrupt the Courthouse Security Officers in the Eleventh Circuit. The Court finds that this argument is overstated. Akal and MVM both earned very high scores in technical proficiency. Although Akal's was higher, the difference is negligible. The agency's evaluation indicates that it is confident in the performance of *either* Akal *or* MVM. Moreover, the previous contract recently expired and the transition between the previous contractor and Akal has been accomplished without incident. The Court expects that another change-over, if required, would also be accomplished with as much care and proficiency. Accordingly, the Court finds that the public would not be harmed by an injunction. In addition, there is a chance that Akal will retain the contract.

Many cases have recognized that the public interest is served when there is integrity in the public procurement system. *See Wetsel–Oviatt Lumber Co. v. United States,* 43 Fed.Cl. at 753 (1999); *Informatics Corp. v. United States,* 40 Fed.Cl. 508, 519 (1998). This consideration remains important for this procurement as well. Thus, the public interest would be served by entering an injunction.

Finally, the United States argues that resoliciting the contract could hurt the public because the contract will cost more money. The Court disagrees with this argument. Because Akal's price, which was the lowest price, has already been disclosed to the public and to Akal's competitors, it is far more likely that the contract will cost less money.[9] In any event, the financial consequences of a resolicitation do not persuade this court to find that an injunction would not be in the public interest.

---

8. Both Akal and the United States argued that since there was no prejudicial violation of procurement law, MVM did not suffer an irreparable injury. Because the Court has held there was a violation and has found prejudice, these arguments are moot in evaluating whether there was an irreparable injury.

9. Of course, the agency's error in this solicitation has forced the government to incur some costs in time spent by agency officials and in time spent by government attorneys in litigation.

### B. Conclusion on Injunction

Besides prevailing on the merits, MVM has established unquestionably that two of the other three factors favor its position. MVM will suffer an irreparable injury without an injunction and the public interest supports entering an injunction. The remaining factor, a balance of the hardships faced by MVM and by Akal, is more disputed. The Court finds that this factor too supports entering an injunction.

Even if the third factor were resolved in Akal's favor, an injunction would be appropriate. As noted in *FMC Corp. v. United States*, 3 F.3d at 427, the Plaintiff does not need to establish all factors to entitle it to an injunction. Accordingly, even though one factor is not resolved entirely in the Plaintiff's favor, the Court will issue an injunction.

### V. Requested Relief

The parties assert vastly different positions on the scope of the remedy. MVM contends that the Court should enjoin performance by any contractor other than itself. The United States believes that the Court should remand for an amendment for all parties within the competitive range. Akal also proposes a remand to the agency for an amendment, although Akal does not specify who should participate after remand.[10]

In fashioning relief for the Plaintiff, the Court must avoid intruding too greatly into the affairs of the agency. The Federal Circuit has instructed that usually a court should not make a contract for the parties. *See Parcel 49C Limited Partnership v. United States*, 31 F.3d 1147, 1153–54 (Fed.Cir.

1994); *Alvin v. United States Postal Service*, 816 F.2d 1562, 1567 (Fed.Cir.1987).

In recognition of the Court's limited role, MVM makes an argument of great finesse. MVM does not ask this Court to direct the award of the contract to it because to do so would take away the agency's right to decide to make contracts. Instead, MVM requests that the Court enjoin performance by anyone other than MVM. The distinction is that the agency retains its discretion in whether to contract at all. MVM relies on *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277 (1983) to support its argument. MVM also cites *Choctaw Mfg. Co. Inc. v. United States*, 761 F.2d 609 (11th Cir.1985) and *Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 204 (D.C.Cir.1984), as cases recognizing the authority of courts to award a contract when "it is clear that, but for the unlawful conduct of the contracting officer, the contract would have gone to the unsuccessful bidder." *Choctaw Mfg. Co., Inc. v. United States*, 761 F.2d at 619.

The Court rejects MVM's argument because this case is not analogous to *Essex Electro*. Here, the "discretion" that the agency would retain is the discretion not to provide courthouse security in the Eleventh Circuit, except for the Northern District of Florida for which there is a separate contract. This choice is simply not an option. People working in the judicial facilities within the Eleventh Circuit undoubtedly need some basic protection. While there may be some items or services that the government may want but does not truly need, courthouse security is essential.[11] Accordingly, the Court rejects MVM's invitation that it enjoin

---

10. Akal also offers the creative possibility that the Court should remand to the agency to ask a single question to clarify the amount of Akal's bid after the removal of the Northern District of Florida. If Akal confirmed that the agency correctly calculated its bid, then Akal could proceed with this contract.

This alternative is not reasonable. Akal would have every reason to accept the agency's offer of the contract terms because Akal is already performing the contract. Even if Akal's bid were too low for the reasons explained in Carlson's affidavit, Akal still appears to be performing *profitably*. Perhaps Akal is not making as much profit as it would have liked, but Akal is not losing money.

Moreover, Akal would be receiving an opportunity not presented to any other bidder. MVM may be willing to perform at the price that the agency assigned as Akal's bid.

In short, this alternative would not correct the problem in this procurement; it would only entrench the problem. Accordingly, the Court will not further address this suggestion.

11. In this regard, the court in *Essex Electro* must have implicitly found that the government could have done without "17 generator sets to be used at new automated flight service stations." *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. at 279.

performance by anyone but the Plaintiff itself.

In addition, MVM has not made a showing required under *Choctaw* and *Delta Data*. Because the solicitation was not amended to eliminate the Northern District of Florida before bidders made their BAFOs, the Court cannot say what other bidders would have done if the solicitation had been amended. The change in solicitation affects all bidders, not just MVM or Akal.[12]

The appropriate remedy for a prejudicial violation of FAR 15.206(a) is set out in FAR 15.206(b) and (c). These sections provide:

(b) Amendments issued before the established time and date for receipt of proposals shall be issued to all parties receiving the solicitation.

(c) Amendments issued after the established time and date for receipt of proposals shall be issued to all offerors that have not been eliminated from the competition.

FAR 15.206.

MVM mentions that if the Court were to order another price competition, the competition "must be restricted to MVM and Akal." Plaintiff's Supplemental Memorandum, filed September 9, 1999, page 25, note 7. MVM offers no support for this argument, which directly contradicts the language of FAR 15.206(c) (stating amendments "shall be issued to all offerors").

Accordingly, the Court orders that the agency shall amend the solicitation to inform all offerors who were within the competitive range that it eliminated the Northern District of Florida. The solicitation shall request new bids from all offerors within the competitive range.

The Plaintiff's Motion for Summary Judgment is GRANTED limited to the relief set forth in this opinion. The Motion for Summary Judgment filed by the United States and the Motion for Summary Judgment filed by Akal are DENIED. Costs to Plaintiff.

## VI. Order

1. The Clerk's Office shall enter judgment in favor of the Plaintiff, limited to the relief set forth in this opinion.

2. The Plaintiff shall submit a memorandum relating to bid preparation costs and attorneys' fees within 30 days. The United States and Akal should respond within 30 days of the date of filing.

3. The parties may propose redactions of this opinion before publication on or before November 29, 1999.

---

12. The present case is distinguishable from *Choctaw*. In *Choctaw*, the awardee claimed small business status. This claim was wrong as a matter of law. When the awardee was eliminated from competition, the court could award the contract to the next lowest-priced qualified bidder. In this regard, the awardee's entitlement of small business status was completely unrelated to the protester. Here, in contrast, the problem with the solicitation affects both the protester and the awardee, as well as other bidders who are not involved in the litigation.