**INTEGRATED BUSINESS SOLUTIONS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–2222–C.

United States Court of Federal Claims.

Nov. 6, 2003.

Keith W. Calhoun–Senghor, Washington, D.C., for Plaintiff.

Douglas Kent Mickle, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant. David T. Truong, National Science Foundation, Arlington, Virginia, of counsel.

## *OPINION*

WILLIAMS, Judge.

This pre-award protest presents the issue of whether an agency must consider an offeror's initial proposal when the offeror's final proposal revision (FPR) has been properly rejected as late. Plaintiff, Integrated Business Solutions, Inc. (IBS), although conceding that its FPR was late, nevertheless challenges the National Science Foundation's (NSF) refusal to consider its initial proposal which it claims was still a viable pending offer. This matter comes before the Court on Plaintiff's Motion for Summary Judgment pursuant to RCFC 56 and Defendant's Motion for Judgment on the Administrative Record pursuant to RCFC 56.1. These motions were filed on October 17, 2003, briefing was completed on October 29, 2003, oral argument was held on October 31, 2003, and Plaintiff filed a Supplement to the Administrative Record with the consent of Defendant on November 4, 2003.

As more fully explained below, because the agency acted reasonably and in accordance with law in refusing to consider Plaintiff's initial proposal, Defendant's Motion for Judgment on the Administrative Record is granted, and Plaintiff's Motion for Summary Judgment is denied.

1. Plaintiff initially pursued its protest with the General Accounting Office (GAO), and GAO denied the protest and a motion for reconsideration. The AR, containing 982 pages, includes the GAO's decision of July 9, 2003 and its decision

*Background*

The following factual background is derived from the Administrative Record (AR).[1]

*The Solicitation*

On July 17, 2002, NSF issued solicitation number CPO–0200006 for a fixed-price contract to provide facility management services, including mail, reproduction, proposal processing, shipping, receiving, conference support, chauffeur, supply, publication, and warehouse services. AR at 80–233.

The solicitation incorporated Federal Acquisition Regulation (FAR) § 52.215–1, titled "Instructions to Offerors—Competitive Acquisition," and stated that the Government intended to evaluate proposals and award a contract without discussions. The solicitation additionally cautioned that an offeror's initial proposal should contain the best terms from a price and technical standpoint. AR at 83.

Paragraph (c)(1) of FAR § 52.215–1 set forth the procedures for submitting proposals, as follows:

> Unless other methods (e.g., electronic commerce or facsimile) are permitted in the solicitation, proposals and modifications to proposals shall be submitted in paper media in sealed envelopes or packages (i) addressed to the office specified in the solicitation, and (ii) showing the time and date specified for receipt, the solicitation number, and the name and address of the offeror.

48 C.F.R. § 52.215–1(c)(1). Paragraph (c)(2) of this FAR provision further stated that the first page of a proposal must identify "persons authorized to negotiate on the offeror's behalf with the Government in connection with this solicitation." 48 C.F.R. § 52.215–1(c)(2). In addition, the solicitation directed that proposals be in writing and delivered by mail or by hand. AR at 83. With respect to late submissions, the solicitation provided that "[p]roposals, including modifications, received at the issuing office after the closing

on reconsideration of September 22, 2003, as well as the GAO's record, including affidavits of an employee of IBS's subcontractor, Dr. Abe Kellizy, NSF's contract specialist, Kristin Spencer, and contracting officer, Patricia Williams.

date and time specified on the cover page of this solicitation will be considered as late submissions and handled accordingly." AR at 83.

The solicitation established the period of performance to run from November 15, 2002, through November 14, 2005, and authorized potential additional performance periods called award terms which could be elected by the parties. AR at 126. It also required that each proposal "be specific and complete in every detail" and "conform to all solicitation provisions, clauses, or other requirements." AR at 144. Finally, the solicitation set forth specific instructions for the submission of paper proposals such as the use of three-ring binders and different colors for revised text. *Id.*

NSF amended the solicitation five times prior to the deadline for submission of initial proposals. AR at 914–18.

### Initial Proposals

IBS submitted its initial proposal on August 22, 2002. AR at 333–616. In its proposal, IBS identified Federal Management Systems, Inc. (FMS) as its subcontractor for the procurement. AR at 334. The proposal did not, however, list Dr. Abe Kellizy, a Senior Associate at FMS, as either an authorized representative of IBS or as a "person[ ] authorized to negotiate on [IBS's] behalf with the Government in connection with this solicitation." *See* 48 C.F.R. § 52.215–1(c)(2).

The initial proposal included, as an attachment, the subcontracting agreement between IBS and FMS, which stated that any proposal submitted by the parties in response to the solicitation was required to list IBS as the prime contractor and FMS as the subcontractor. AR at 527. Nowhere in the subcontracting agreement was there any language granting the subcontractor authority to act on behalf of the prime contractor, or granting Dr. Kellizy the right to act on behalf of IBS. AR at 526–32.

### Discussions

On February 24, 2003, NSF determined that IBS's initial proposal was one of four within the competitive range. AR at 267. That same day, NSF requested that IBS answer eleven questions related to its proposal and scheduled IBS's oral presentation as part of its discussions with the offerors in the competitive range. AR at 267–69. IBS responded with a fifty-one-page submission on February 27, 2003. AR at 921–71.

On March 5, 2003, NSF conducted oral discussions with IBS. AR at 263. Plaintiff alleges that, "[d]uring this [March 5, 2003] meeting, IBS clarified and confirmed the terms of its August 22, [2002] offer, [and that] IBS's confirmed offer was good for 60 days (or until May 6, 2003) pursuant to the terms of its offer and the RFP." Pl.'s Compl. ¶ 6, Tr. at 10–11.[2]

### The Agency's Request for Final Proposal Revisions and Amendment 6 to the RFP

By letter dated March 10, 2003, the agency requested FPRs and issued Amendment 6 to the solicitation, stating:

> The purpose of this letter is to inform you that all discussions have been concluded and as a result the National Science Foundation requests that you submit your final proposal revision (FPR). The FPR gives your organization an opportunity to submit its best terms from a technical and cost/price standpoint.

> An original and six copies of Volume I, Pricing Proposal, and an original and six copies of Volume II, Technical Proposal constituting your FPR must be submitted to Kristin Spencer, National Science Foundation, Division of Contracts Policy and Oversight, 4201 Wilson Boulevard, Room 475; Arlington, VA 22230, by 10:30 AM (EST) on Thursday, March 13, 2003. Review Section A2 of the solicitation for important delivery and deadline information. Any modification of a former offer received after the date and time specified above will be handled in accordance with the *Instructions so Offerors—Competitive Acquisition*

**2.** The citation to this transcript refers to the Status Conference held on October 1, 2003. Unless otherwise noted, other citations to the transcript refer to the oral argument held on October 31, 2003.

provision of the solicitation (FAR 52.215–1).

An official authorized to bind your organization must sign the FPR. As stated in Section L6.1 of the solicitation, revised or added pages shall be a different color than the initial proposal. Revised text shall be a different color than the initial proposal, and be identified by bars and/or other notations in the page borders.

You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. If no revisions are made to your original offer, confirm that the offer remains unchanged. Attached are CPO–0200006, Amendment No. Six, and additional questions for your consideration as you prepare your FPR.

AR at 272.

Amendment 6 revised the original period of performance from November 15, 2002 through November 14, 2005, to April 1, 2003 through March 31, 2006. AR at 275. Potential award terms were extended by twelve months for each of the periods earned, and were to expire March 31, 2007; March 31, 2008; March 31, 2009; and March 31, 2010 respectively. AR at 275. NSF's March 10, 2003 letter soliciting IBS's FPR also requested clarification of, *inter alia*, plaintiff's labor rates and operations and staffing plans. AR at 273.

*Amendment 7*

On March 12, 2003, the Contracting Officer issued Amendment 7 to the solicitation which provided an electronic copy of the unit pricing table in Section B2, and information concerning a reduced publication inventory requirement. AR at 245. This Amendment permitted offerors to submit change pages only for their final proposal revision. The cover pages of each amendment, as well as the solicitation, required offerors to acknowledge receipt of amendments prior to the time and date specified for the receipt of final proposal revisions. AR at 80, 224, 232. Each amendment read: "FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER." AR at 224, 232.

*IBS's Final Proposal Revision*

In its FPR, IBS revised its August 22, 2002 initial proposal stating:

> To be more competitive, we reduced Overhead and G & A rates. This resulted in lower billing rates for standard and non-standard labor categories, and additional savings to the government.

> We have reviewed the comments from the oral presentation and the items that have been communicated to us as requiring our attention. This review has resulted in changes to our price proposal. As a result of the planned departure of a key NSF employee from the Proposal Processing Unit, IBS has added price information for a Supervisor to staff the Unit.

> The standard and non-standard labor rates for the shuttle bus driver have been adjusted to conform to the other labor categories. As recomputed, these rates do not carry substantially more burden than the other rates and prices.

AR at 638. IBS's final proposal offered to perform the contract for the revised term set forth in Amendment 6 and lowered its pricing. *Compare* AR at 344–409 *with* AR at 630–97. IBS also addressed the deficiencies NSF noted in its March 10, 2003 letter. AR at 765–66; 771–72; 776–78; 781–85.

*The Receipt of Final Proposal Revisions*

On March 13, 2003, NSF received timely FPRs from Elite Management Services, Inc. and Glencor Services, Inc. by hand-delivery at 9:40 a.m. and 10:20 a.m., respectively. AR at 296–97. That morning at approximately 10:25 a.m., NSF's contract specialist, Kristin Spencer, received a telephone call from Dr. Abe Kellizy, a consultant to FMS, IBS's subcontractor, requesting a one-hour extension to deliver IBS's FPR. Affidavit of Kristin Spencer (Spencer Aff.) ¶ 3, AR at 247; Affidavit of Dr. Abe Kellizy, June 1, 2003 (Second Kellizy Aff.) ¶¶ 2–4, AR at 39.[3] Ms.

---

**3.** In his affidavit filed during the GAO protest, Dr. Kellizy testified that "[o]n March 13, 2002, I

Spencer requested that Dr. Kellizy put the request for extension in writing, and Dr. Kellizy sent a written request for an extension of time via e-mail at 10:26 a.m., stating:

We are en route to deliver proposal for IBS/FMS.

We request a 1–hour extension of deadline.

Thank you.

Abe Kellizy, Ph.D.

Senior Associate

Federal Management Systems, Inc.

AR at 250; Second Kellizy Aff. ¶ 4, AR at 39.

At 10:30 a.m. on March 13, 2003, NSF received an incomplete FPR by e-mail from IBS's subcontractor, FMS, that contained only IBS's technical proposal. AR at 251. At 10:32 a.m., NSF received the remainder of IBS's FPR, i.e., the cost proposal, via a second e-mail with the subject line stating: "IBS–FMS Cost Proposal attached until physical delivery." AR at 252.

Dr. Kellizy hand delivered a complete paper version of IBS's proposal at 11:11 a.m., on March 13, 2003. The contracting officer, Patricia Williams, informed Dr. Kellizy that the proposal was late. AR at 253; Spencer Aff. ¶ 8, AR at 248. Dr. Kellizy testified in his affidavit that he requested that NSF consider IBS's initial proposal if the revised proposal was rejected as being untimely.[4] IBS's acknowledgment of Amendments 6 and 7 was included with its final proposal revision received by NSF at 11:11 a.m. on March 13, 2003. AR at 625–26.

### NSF's Determination that IBS's Final Proposal Revision was Late

By letter dated March 20, 2003, NSF informed IBS that its proposal was not eligible for consideration due to late submission and denied IBS's request for an extension of the proposal deadline. AR at 257. The letter addressed IBS's request that the agency consider its original proposal as follows:

was the duly designated representative of IBS in relation to its bid submission to the National Science Foundation (NSF) for Solicitation No. CPO–0200006 (Facilities Management Services)." Second Kellizy Aff. ¶ 1, AR at 39. However, Dr. Kellizy is not an employee of IBS, and, as noted above, neither IBS's proposal nor the IBS–FMS subcontracting agreement designated him as such.

NSF also considered whether the original proposal submitted by IBS could still be considered. An initial proposal, however, cannot be considered an "otherwise successful proposal" if the government issued an amendment adding a requirement that the initial proposal did not address. Amendment 6, faxed to your organization on March 10, 2003 provided a substantial change in the period of performance. Amendment 7, containing an electronic version of the pricing schedule included in Amendment 6 and revised publication inventory levels, was sent via e-mail on March 12, 2003. From this I must conclude that the prices proposed in the initial proposal are no longer relevant. The initial proposal also does not adequately address areas of concern to the technical evaluation panel. Regretfully, I must therefore conclude that the initial proposal is ineligible for further consideration.

AR at 258.

By letter dated March 21, 2003, IBS requested a meeting with NSF to discuss the determination of ineligibility and reiterated its request that NSF consider its initial proposal. AR at 259. In this letter, IBS stated:

[A]t our request, our subcontractor, Federal Management Systems, Inc. (FMS), explicitly confirmed to NSF that our initial proposal should be considered if our revised electronic and paper submissions were not considered.

AR at 259. On March 25, 2003, NSF declined IBS's request for a meeting and consideration of IBS's initial proposal. AR at 261.

### The Agency Protest and the GAO Protest

On March 28, 2003, IBS filed a timely agency protest alleging that the electronic submission of its FPR was timely, and that NSF should have considered IBS's initial proposal. AR at 315–19. NSF denied IBS's protest on April 17, 2003.

4. Affidavit of Dr. Abe Kellizy, April 23, 2003 (First Kellizy Aff'd) ¶ 4; AR at 79. Ms. Spencer, who was also present, does not recall this statement, and Ms. Williams denies that Dr. Kellizy made such a statement. Compare First Kellizy Aff. ¶ 4 with Williams Aff. ¶ 8 and Spencer Affidavit ¶ 9, AR at 79, 248, 255.

On April 28, 2003, IBS filed a protest with GAO essentially reiterating the allegations in its agency protest. AR 47, 51, 54. GAO denied the protest, concluding that NSF properly rejected IBS's electronically submitted FPR as late and reasonably declined to consider IBS's initial proposal. *Integrated Bus. Solutions, Inc.,* B–292239 (July 9, 2003); AR at 17–21. IBS filed a request for reconsideration on July 18, 2003, which GAO denied on September 23, 2003. *Integrated Bus, Solutions, Inc.-Recon.,* B–292239.2 (Sept. 23, 2003); AR at 1–3.

IBS filed the instant action on September 24, 2003, seeking a permanent injunction requesting that IBS's August 22, 2002 offer be fairly evaluated for award, and that IBS be awarded its costs and attorneys fees. In its motion for partial summary judgment, and its "motion to clarify relief sought," IBS sought two forms of alternative relief: that its March 13, 2002 FPR be evaluated or that all offerors in the competitive range be allowed to submit revised proposals in light of NSF's "newly disclosed requirements." [5]

The Government agreed to delay award of this contract pending resolution of this case, so the Court has expedited consideration of this matter.

### Discussion
### *Jurisdiction and Standard of Review*

The Court has jurisdiction over this bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). In a bid protest action,

the Court reviews the defendant's decision under the standards in the Administrative Procedure Act (APA), 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4). The APA directs a reviewing court to overturn agency actions that are arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

 The protestor must show that the agency's actions were either without a reasonable basis or in violation of applicable procurement law. *Information Technology and Applications Corp. v. United States,* 51 Fed.Cl. 340 (2001), *aff'd,* 316 F.3d 1312 (Fed. Cir.2003) (*citing GraphicData LLC, v. United States,* 37 Fed.Cl. 771, 779 (1997)); *see generally CCL Service Corp. v. United States,* 48 Fed.Cl. 113 (2000). To prevail in a protest, the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it. *Data General Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996). To show prejudice, the protestor must demonstrate that there is a reasonable likelihood that absent the error or violation of law, it would have been awarded the contract. *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir. 1999) (*quoting Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996)).

### *The Agency's Refusal to Consider IBS's Initial Proposal Was Rational and in Accordance with Law*

 Plaintiff contends that the Court should order NSF to evaluate its August 22,

---

**5.** By "newly disclosed requirements," IBS meant that NSF failed to disclose that initial proposals could be disqualified for failing to comply with requirements set forth in the solicitation's amendments. This alleged omission, in Plaintiff's view, represented a failure to disclose a mandatory evaluation criterion, thus preventing a fair competition. Tr. at 4–15; Plaintiff's Motion to Clarify Relief Sought at 2–3. This argument is frivolous. The solicitation clearly disclosed to offerors that they had to comply with all solicitation requirements, and a change in the term of this contract constituted such a requirement, properly announced in Amendment 6. It is a fundamental tenet of procurement law that agencies must amend solicitations when their requirements change in order to afford offerors an opportunity to revise their proposals. FAR § 15.206(a) (2002); *Seaborn Health Care, Inc. v. United States,* 55 Fed.Cl. 520, 527 (2003); *MVM. Inc. v. United States,* 46 Fed.Cl. 137, 145 (2000);

*Candle Corp. v. United States,* 40 Fed.Cl. 658, 663 (1998). Here, Amendment 6 fully apprised offerors of the shift in the performance period, and gave offerors every opportunity to revise their proposals to accommodate this. IBS itself did revise its proposal to conform with the changed performance period, but, exclusively due to its own fault, failed to submit its FPR on time.

Although IBS's request that its FPR be evaluated is inconsistent with its concession that its FPR was properly rejected as late, IBS seeks this remedy because "it would save both prospective offerors and the agency substantial time and expense" and "minimize the risk that IBS's pricing data, submitted during this dispute, [would] be disclosed to prospective offerors, thereby putting IBS at a disadvantage." Plaintiff's Motion to Clarify Relief Sought at 3– 4. Neither party requested a Protective Order in this case. *See,* Tr. (Oct. 1, 2003) at 40.

2002 proposal because IBS confirmed its initial offer and manifested no intent to withdraw that offer. In addition, IBS contends that it had no obligation to address Amendment 6 of the solicitation.

Plaintiff's claim fails for several reasons. First, by submitting an FPR which revised its initial proposal, and by requesting the agency to consider that FPR even though it was untimely, IBS revoked its initial proposal. Second, Plaintiff's initial proposal was not capable of being accepted because it was not confirmed by an authorized agent of IBS in time to be considered. Finally, Plaintiff's initial proposal did not address a material change in the contract's performance dates imposed by an amendment to the solicitation and thus could not have committed IBS to perform the required services for some four months of the revised contract term. As such, the Court concludes that the agency reasonably refused to consider Plaintiff's initial proposal.

### IBS's Attempt to Submit an FPR Manifested Its Intent to Revoke Its Initial Proposal

The Administrative Record contains multiple indicia of IBS's clear intent to submit its FPR, rather than its initial proposal, for evaluation. In the FPR itself, IBS characterizes its FPR as "more competitive" than its initial August 22, 2002 proposal, citing changes from its initial proposal, *i.e.*, reduced overhead rates, reduced general and administrative rates, additional pricing information for a supervisor and recomputed labor rates. AR at 638. Moreover, the FPR necessarily contained a different performance period.

IBS clearly made an effort to have its FPR considered despite its untimeliness, as evidenced by the flurry of activity in which Dr. Kellizy engaged on the morning the FPR was due. Dr. Kellizy telephoned the agency personnel on his way to deliver the final offer and requested an extension of time. At the contract specialist's direction, he put his request for an extension of time in writing and sent an e-mail. Even though the solicitation did not authorize electronic submission of FPRs, IBS attempted to submit its FPR in this fashion, transmitting the technical portion of its FPR before the deadline for receipt of proposals, and later, its cost proposal via e-mail, stating it was "attached until physical delivery." Finally, some forty-one minutes after proposals were due, Dr. Kellizy submitted IBS's FPR via hand-delivery as required by the solicitation.[6]

Although this Court has not addressed the question of whether an agency is required to consider an initial offer when an FPR is late, GAO squarely resolved this issue in *Touchstone Textiles, Inc.*, B–272230.4, 96–2 Comp. Gen. ¶ 107, 1996 WL 501374.[7] In *Touchstone*, the protestor argued that the agency was required to make an award based upon its technically acceptable prior offer, but GAO disagreed, holding that because the protestor had submitted an untimely best and final offer (BAFO) which modified its initial proposal, the agency had properly eliminated the initial offer from further consideration.[8] GAO reasoned that even though the BAFO in *Touchstone* was untimely, the agency could not ignore the protestor's intent to modify and replace its initial proposal's terms.[9] In *Touchstone*, as in the instant

---

6. The only evidence of record that supports an intent on IBS's part to confirm its initial proposal is Dr. Kellizy's request that the agency consider this offer in place of the FPR if the FPR were late or the extension denied. First Kellizy Affidavit, ¶ 4, AR at 79. This effort on IBS's part to hedge its bets and have its initial proposal considered as some sort of fail-safe measure in the event its FPR was rejected does not support a conclusion that IBS offered its initial proposal to the Government on March 13, 2003. Even at the GAO proceeding, IBS continued to argue that the agency should have accepted the electronic version of its FPR, continuing to evidence its intent to have this proposal considered.

7. Although GAO decisions are not binding on this Court, the Court recognizes GAO's long-standing expertise in the bid protest area and accords its decisions due regard. *North Carolina Division of Services for the Blind v. United States*, 53 Fed.Cl. 147, 166 n. 13 (2002); *Bean Dredging Corp. v. The United States*, 22 Cl.Ct. 519, 522 n.2 (1991) (*citing Honeywell, Inc. v. United States*, 870 F.2d 644, 647–48 (Fed.Cir.1989)).

8. Since GAO issued the *Touchstone* decision, the term BAFO has been changed in the FAR to final proposal revision (FPR).

9. In so ruling, GAO referenced the Restatement (Second) of Contracts, Section 42 (1981), citing

case, the final proposal contained different pricing terms from the initial offer, and the changed terms in Touchstone's BAFO "clearly operated as a revocation of its initial offer."

The Comptroller General explained:

As a general rule, once offerors submit BAFOs, award must be based on the BAFOs and not upon prior versions of the proposals. *See* FAR § 15.611(d); *Department of Army—Recon*, B–251527.3, Sept. 17, 1993, 93–2 CPD ¶ 178[, 1993 WL 373887]. Since an offeror's submission of a BAFO typically demonstrates an intent by that offeror to modify and/or replace an earlier offer, the submission of a BAFO generally operates to extinguish the agency's right to accept the earlier offer. *Department of the Army—Recon*, supra.

*Id.* In a similar vein, GAO in *Department of the Army—Reconsideration*, B–251527.3, 93–2 Comp. Gen. ¶ 178, ruled that an agency had improperly considered and ultimately made an award based upon an initial proposal when a BAFO was untimely. Again, GAO reasoned that the subsequent submission of a revised offer or a BAFO "[acted] to extinguish the agency's right to accept the earlier offer." GAO relied upon facts present here, noting that "it is·not reasonable to treat a proposal as remaining open where, as here, the offeror has attempted to submit revised pricing." *Id.*

Because IBS evidenced a clear intent to submit an FPR (albeit untimely), the agency reasonably concluded that its right to accept IBS's initial proposal was extinguished. Thus, the Court finds the agency's refusal to consider IBS's initial offer to be reasonable and in accordance with law.

### *Plaintiff Did Not Confirm Its Initial Proposal by an Authorized Representative*

■ There is an independent ground supporting the agency's refusal to consider IBS's initial proposal on March 13, 2003: there is no evidence of record suggesting that Dr. Kellizy was an authorized representative of IBS who could bind IBS. Nothing in IBS's proposal, the subcontracting agreement between IBS and FMS, or any other contemporaneous documentation indicated that Dr. Kellizy, a consultant to FMS, was somehow authorized to confirm IBS's initial offer on March 13, 2002, or request that it be considered for award if IBS's FPR was deemed untimely. There was no privity of contract between the Government and the subcontractor for whom Dr. Kellizy consulted. *See generally Sovereign Construction Co.*, GSBCA 974, 1964 BCA ¶ 4387, 1964 WL 743 (stating that appellant's subcontractor had no authority to bind appellant since there was no privity of contract between the Government and appellant's subcontractor).

IBS's subsequent attempt to confirm its initial proposal in a March 21, 2002 letter from IBS's president was untimely. That attempt was not made until over a week after FPRs or confirmation of offers were due, after the agency had rejected the FPR. It is clear that the March 10 letter requesting FPRs also addressed the scenario in which an offeror planned to submit its original proposal in lieu of an FPR. The letter stated: "If no revisions are made to the original offer, confirm that the offer remains unchanged." As GAO concluded in IBS's protest, this letter can only be read to establish the due date for both FPRs and confirmation of original offers to be March 13, 2003 at 10:30 a.m. *See Dept. of the Army—Reconsideration*, B–251257–3, 93–2 Comp. Gen. ¶ 178 (stating that "any response to the agency's letter [requesting BAFOs or confirmation of initial proposals]—whether submission of a revised proposal or a statement that the offeror desired that its initial proposal continue to be considered—had to be received timely, i.e. by the time set for receipt of BAFOs"); *Robotic Systems Technology*, B–271760, 96–1 Comp. Gen. ¶ 229, 1996 WL 251439 (interpreting RFP amendment to mean offeror's confirmation of its offer had to be received by the date and time specified for the receipt of BAFOs). Thus, IBS's March 21, 2003 letter coming as it did after the due date for final proposal revisions could

---

common law contracting principles which establish that an offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention—such as a revised offer—not to enter into the originally proposed contract.

not resuscitate IBS's initial offer.[10]

Reading the agency's March 10 request for FPRs or for confirmation of original offers as requiring the submission of either the FPR or the confirmation of the original offer on the same deadline is consistent with FAR § 15.307(b), which requires the contracting officer to establish a common cut-off date for the receipt of FPRs. *See generally Dubinsky v. United States*, 43 Fed.Cl. 243, 263–64 (1999) ("a common cut-off date ... sets a level playing field on which [contractors] may compete"). Here, as GAO recognized, it would have been unfair to require the other offerors to submit FPRs by the March 13 deadline but permit IBS to confirm its initial proposal days later.

### Because IBS's Initial Proposal Did Not Address Amendment 6, That Offer Failed to Conform to a Material Solicitation Requirement

■ There was yet another justification for the contracting officer to refuse to consider IBS's initial proposal here. Amendment 6 shifted the core period of contract performance from November 15, 2002 through November 14, 2005, to April 1, 2003 through March 31, 2006. AR at 275. IBS's initial proposal only committed IBS to perform the facility management services at issue until November 14, 2005, leaving a required performance period of some four months without coverage. The period of performance is a material solicitation requirement. *Development Associates*, B–188416, 77–2 CPD ¶ 64, 1977 WL 12318 (stating "the time for performance is a material factor in a solicitation"); *see also Farmland National Beef*, B–286607, 2001 CPD ¶ 31, 2001 WL 122348; *Logitek, Inc.*, B–238773, 90–2 CPD ¶ 16, 1990 WL 278194; *Sea Containers America, Inc.*, B–243228, 91–2 CPD ¶ 45, 1991 WL 135567; *Ford Aerospace and Communications Corp.*, B–200672, 80–2 CPD ¶ 439, 1980 WL 14501; *Lawrence Johnson & Associates, Inc.*, B–196442, 80–1 CPD ¶ 188, 1980 WL 16956; (recognizing that delivery schedule is a material solicitation requirement).

Plaintiff cites *Grade–Way Constr. v. United States*, 7 Cl.Ct. 263 (1985), to support the proposition that a shift in the performance period is not material. That case, however, is inapposite. In *Grade–Way*, the Government conducted a sealed-bid procurement for construction, and an amendment was issued to delay the start date of the contract by twenty days. This shift in the term of Grade–Way's performance was held to be a trivial formality which did not require the rejection of a bid. The court explained:

> Because the issuance of the notice to proceed was only assumed or estimated for purposes of the completion schedule, and because the government was already entitled to award the contract as late as [the date specified in the Invitation For Bids] ...., this amendment was a mere technicality and its effect was nil.

*Id.* at 269. In contrast, accepting IBS's initial proposal would have left the Government with a four-month gap in the performance of a services contract—hardly a trivial formality.

Because Amendment 6 shifted the contract term and IBS's initial offer did not bind IBS to perform from November 14, 2005 to March 31, 2006, NSF's refusal to consider the initial proposal was proper. A proposal that fails to satisfy a material solicitation term is unacceptable and may not form the basis for an award. *See Marisco, Ltd.*, B–235773, 89–2 CPD ¶ 8, 1989 WL 240888; *Minigraph, Inc.-Recon.*, B–237873.3, 90–2 CPD ¶ 492, 1990 WL 293635; *see also Environmental Control Div., Inc.*, B–255181, 94–1 CPD ¶ 115, 1994 WL 53725 (stating that an offeror's initial proposal could not be considered an "otherwise successful proposal" because it did not commit the offeror to a change in work hours resulting from a subsequent amendment to the solicitation).

### CONCLUSION

Plaintiff has not demonstrated that NSF's refusal to consider its initial proposal was irrational or a violation of statute or regulation. Nor has Plaintiff demonstrated that Defendant failed to disclose a material evaluation factor warranting either a new round of FPRs or an evaluation of IBS's March 13, 2003 FPR. Accordingly, based on the forego-

---

10. That letter also came too late to operate to authorize Dr. Kellizy to be IBS's representative.

ing, Defendant's Motion for Judgment Upon the Administrative Record is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**. The Clerk of the Court shall enter judgment for Defendant. No costs shall be awarded.

**IT IS SO ORDERED.**