**ES–KO, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–528C.**

United States Court of Federal Claims.

Aug. 2, 1999.

---

Alan M. Grayson and Brian T. Scher, Washington, D.C., for plaintiff.

Kent G. Huntington, U.S. Department of Justice, Washington, D.C., with whom were of counsel Gale Furman and Portia Bonavitacola, Defense Supply Center, U.S. Defense Logistics Agency, Philadelphia, Pennsylvania, for defendant. Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Mark A. Melnick, U.S. Department of Justice, Washington, D.C., appeared on the briefs.

## ORDER

BRUGGINK, Judge.

This post-award bid protest action is before the court on plaintiff's request for immediate injunctive relief to enforce the automatic stay provision set out in Federal Acquisition Regulation ("FAR") 33.103(f)(3), 48 C.F.R. § 33.103(f)(3) (1998).[1] The court heard oral argument on this issue, which we consider as a request for a preliminary injunction, on July 30, 1999.

## BACKGROUND

The procurement that forms the backdrop to the immediate dispute was conducted by the Defense Supply Center—Philadelphia ("DSCP"), a regional office of the Defense Supply Center, which is itself a subdivision of the U.S. Defense Logistics Agency ("DLA"). In October 1998, DSCP issued Request for Proposals ("RFP") No. SP0300–98–R–4007 seeking a subsistence prime vendor to provide food distribution support to United States military forces stationed in the Republic of Korea. The RFP sought proposals for

---

1. All subsequent references to the FAR reference the 1998 edition of Title 48 of the Code of Federal Regulations unless stated otherwise.

a one-year contract term, with the possibility of four one-year options, and contemplated award to the offer deemed by the agency to represent the best value to the Government. DLA contract clause 52.233–9000, entitled "Agency Protests," was included in the contract. That clause states:

Companies protesting this procurement may file a protest 1) with the Contracting Officer, or 2) with the General Accounting Office, or 3) pursuant to Executive Order 12979, with the activity for a decision at a level above the Contracting Officer. Protests filed with the activity should be addressed to the Contracting Officer, but should clearly state that they are an "Agency Level Protest under Executive Order 12979". The Contracting Officer will forward the protest to the appropriate official for decision. (This process allows for a higher level decision, on the initial protest; it is not a review of a contracting officer's decision on a protest filed with the contracting officer). Absent a clear indication of the intent to file an agency level protest, protests will be presumed to be protests to the Contracting Officer.

RFP at 128.

The agency received six proposals, including a proposal submitted by ES–KO, Inc. ("ES–KO"). After conducting a series of discussions with offerors, DSCP determined that the offer submitted by USFI, Inc. ("USFI") represented the best value. ES–KO's offer was rated second-in-line for award. Consequently, the agency awarded Contract No. SP0300–98–R–4007 to USFI on June 21, 1999.[2] Upon learning of the award, ES–KO requested a debriefing, which was held on June 30, 1999. ES–KO filed a protest with the contracting officer on July 6, 1999 based upon information divulged during the debriefing. The protest was not identified as an "Agency Level Protest under Executive Order 12979." The contracting officer did not suspend contract performance pending resolution of the protest.

2. USFI was notified of the filing of the complaint. It has not, to date, made an appearance.

3. On July 30, 1999, plaintiff filed an amended complaint for declaratory and injunctive relief.

On July 22, 1999, ES–KO learned that DSCP had not suspended performance of the contract pursuant to FAR § 33.103(f)(3), which provides for an automatic stay in the event of an agency protest filed within five days of a post-award debriefing. ES–KO then submitted a written request that the agency immediately suspend further contract performance. On July 27, 1999, agency counsel notified ES–KO that the contract would not be suspended. Plaintiff then filed its complaint with this court on July 29, 1999, seeking an immediate injunction to enforce the FAR automatic stay provision, which it contends should have been triggered by its protest to the contracting officer.[3]

On July 30, 1999, the court heard oral argument on plaintiff's request for preliminary injunctive relief to suspend the contract pending resolution of its agency protest. At that hearing, the court heard testimony from Raymond G. Miller, Chief of the Overseas Support Unit within the division of DSCP responsible for distribution of food to U.S. armed forces personnel outside the continental United States, and the first-line supervisor of the contracting officer for the Korea prime vendor procurement. Mr. Miller testified regarding the potential impact of an injunction on the DSCP's mission under the challenged contract.

## DISCUSSION

The only issue to be addressed in this order is whether the automatic stay provision of FAR § 33.103(f)(3) applies to an agency protest that seeks review by the contracting officer, rather than review by an agency official at a higher level. The merits of the agency's decision to award the contract to USFI, which have been put before the court by plaintiff's July 30 amended complaint, are not addressed in this order.

### I. Jurisdiction

As a threshold matter, we must decide whether this court has jurisdiction to

Unlike the original complaint, the amended complaint seeks a review of the merits of DSCP's decision to award the contract to USFI.

address the propriety vel non of an agency's decision not to suspend performance of a contract pursuant to FAR § 33.103(f).[4] The Tucker Act grants this court jurisdiction "to render judgment on an action by an interested party objecting to . . . an alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1) (Supp. II 1996). As the Federal Circuit has recently held: "The operative phrase 'in connection with' is very sweeping in scope. As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." *Ramcor Servs. Group, Inc. v. United States,* 185 F.3d 1286 (Fed.Cir. 1999). This reasoning applies with equal force to alleged violations of regulations. *See* 28 U.S.C. § 1491(b)(1).

■ In *Ramcor,* the Federal Circuit held that the statutory provision permitting agencies to override the automatic stay triggered by timely filing of a protest with the General Accounting Office ("GAO") is a statute "in connection with" the underlying procurement. *See id.* at 1288–89. The court noted that an override decision allows an agency "to procure immediately." *Id.* Consequently, the court held that the Court of Federal Claims has jurisdiction to consider the merits of an agency's decision to override an automatic stay, even if the merits of the agency's contract award determination are not before the court. *See id.*

Applying this reasoning to an agency's decision not to implement an automatic stay yields the same conclusion. FAR § 33.103(f)(3), which mandates suspension of a contract upon the timely filing of a post-award protest and provides a mechanism by which an agency may override the automatic stay, is undoubtedly a regulation "in connection with" the procurement. An agency's refusal to implement the automatic stay, or its override of the stay, allow the agency to procure immediately. This court, therefore, has jurisdiction to render judgment on plaintiff's action, which alleges a violation of FAR

§ 33.103(f)(3), a regulation "in connection with a procurement." 28 U.S.C. § 1491(b)(1).

## II. The Merits of Plaintiff's Request for Injunctive Relief

■ In order to obtain a preliminary injunction, plaintiff must meet its burden of establishing that it is entitled to such extraordinary relief. The court is required to consider four factors: (1) the likelihood of plaintiff's success on the merits of its complaint; (2) whether plaintiff will suffer irreparable harm if the procurement is not enjoined; (3) whether the balance of hardships tips in the plaintiff's favor; and (4) whether a preliminary injunction will be contrary to the public interest. *See FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993). No one factor is dispositive to the court's inquiry; "the weakness of the showing regarding one factor may be overborne by the strength of the others." *Id.* At the outset, we note that the circumscribed relief sought by plaintiff in its complaint—an injunction suspending the contract pending resolution of its agency protest—defines the scope of our inquiry on these four factors.

### 1. Likelihood of Success on the Merits

■ Under this factor, we consider the likelihood of plaintiff's success on the merits of its contention that DSCP was required by FAR § 33.103(f)(3) to suspend the contract once plaintiff timely filed its protest with the agency. In the particular circumstances of this protest, we do not consider the likelihood of plaintiff's success on the merits of the agency's determination to award the contract to USFI because plaintiff's original complaint alleged only a violation of FAR § 33.103(f)(3).

Plaintiff's likelihood of success on the merits of its complaint depends solely on this court's interpretation of FAR § 33.103(f)(3) and the associated supplementary regulations promulgated by DLA. Because this is a purely legal issue, the court will address the merits directly in this order.

---

4. During a telephone status conference held on July 29, 1999, defendant's counsel raised the issue of whether this court has jurisdiction to render judgment on an alleged violation of FAR § 33.103(f). Defendant did not, however, address the issue in its opposition to plaintiff's complaint for injunctive relief, or pursue the issue at oral argument. Nevertheless, the court is required to satisfy itself as to jurisdiction in every case.

A brief overview of the context and promulgatory history of FAR § 33.103 is necessary. The backdrop for the FAR provision is Executive Order 12,979, issued on October 25, 1995. *See* 60 Fed.Reg. 55,171 (1995). Section one of the Executive Order states that agencies:

shall prescribe administrative procedures for the resolution of protests to the award of their procurement contracts as an alternative to protests in fora outside the procuring agencies. Procedures prescribed pursuant to this order shall:

(a) emphasize that whenever conduct of a procurement is contested, all parties should use their best efforts to resolve the matter with agency contracting officers;

. . . .

(c) allow actual or prospective bidders or offerors whose direct economic interests would be affected by the award or failure to award the contract to request a review, at a level above the contracting officer, of any decision by a contracting officer that is alleged to have violated a statute or regulation and, thereby, caused prejudice to the protester; and

(d) except where immediate contract award or performance is justified for urgent and compelling reasons or is determined to be in the best interest of the United States, prohibit award or performance of the contract while a timely filed protest is pending before the agency. To allow for the withholding of a contract award or performance, the agency must have received notice of the protest within either 10 calendar days after the contract award or 5 calendar days after the bidder or offeror who is protesting the contract award was given the opportunity to be debriefed by the agency, whichever date is later.

Exec. Order No. 12,979 § 1, 60 Fed.Reg. 55,171, 55,171 (1995).

Subpart 33.103 of the FAR, which governs "protests to the agency," was subsequently amended to implement the Executive Order. *See* 62 Fed.Reg. 270 (1997); 61 Fed.Reg. 39,219 (interim rule July 26, 1996). Several paragraphs of FAR § 33.103, as amended, are relevant to the present action:

(d) The following procedures are established to resolve agency protests effectively, to build confidence in the Government's acquisition system, and to reduce protests outside of the agency:

. . . .

(3) All protests filed directly with the agency will be addressed to the contracting officer or other official designated to receive protests.

(4) In accordance with agency procedures, interested parties may request an independent review of their protest at a level above the contracting officer; solicitations should advise potential bidders and offerors that this review is available. Agency procedures and/or solicitations shall notify potential bidders and offerors whether this independent review is available as an alternative to consideration by the contracting officer of a protest or is available as an appeal of a contracting officer decision on a protest.

. . . .

(f) *Action upon receipt of protest.*

. . . .

(3) Upon receipt of a protest within 10 days after contract award or within 5 days after a debriefing date . . ., the contracting officer shall immediately suspend performance, pending resolution of the protest within the agency, including any review by an independent higher level official, unless continued performance is justified, in writing, for urgent and compelling reasons or is determined, in writing, to be in the best interest of the Government. Such justification or determination shall be approved at a level above the contracting officer, or by another official pursuant to agency procedures.

48 C.F.R. § 33.103. The net effect of this latter provision is that an automatic suspension of a procurement is dictated if a protest is filed before either of the specified deadlines, unless an override is justified in writing.

These FAR provisions are supplemented by DLA Directive ("DLAD") 4105.1, which promulgates DLA-specific regulations per-

taining to FAR Part 33.[5] The provision modifying FAR § 33.103 states: "All DLA field activities shall provide a protest procedure as an alternative to filing a protest with the contracting officer. The decision maker for such an alternative 'agency level' procedure shall be at least one level above the contracting officer." DLA 33.103(c) (1998).[6] In addition, DLA 33.106(c) requires contracting officers to insert DLA clause 52.233–9000 (set out in full *supra*) in all solicitations. That clause explicitly states that DLA has adopted the bifurcated protest system contemplated in FAR § 33.103(d)(4): a protester may either file a contracting officer protest or a protest requesting a decision at a higher level.[7] In both cases, the protest is initially filed with the contracting officer. The clause adds, however, that protests are presumptively contracting officer protests unless clearly identified otherwise.

The facts on this issue are not in dispute. Plaintiff filed a contracting officer protest with DSCP within five days after its debriefing.[8] USFI's contract has not been suspended by the agency. Yet, DSCP did not prepare a written justification or determination to preclude application of the automatic stay. Plaintiff contends that the agency was required by FAR § 33.103(f)(3) to immediately suspend performance upon the filing of its protest on July 6. It notes that the automatic stay is triggered by timely filing of a "protest," defined by the FAR as "a written objection by an interested party to ... [a]n award or proposed award of the contract." FAR § 33.101. This definition thus embraces contracting officer protests. As a second prong of its attack, plaintiff argues that neither DLAD 4105.1 nor DLA 52.233–9000

limit application of the automatic stay to higher-level protests.

Defendant's argument, in essence, is that the automatic stay of FAR § 33.103(f)(3) does not apply to contracting officer protests. Its argument rests on its interpretation of the scope of Executive Order 12,979 and FAR § 33.103. According to defendant, prior to issuance of the Executive Order, FAR § 33.103 related only to contracting officer protests; the Executive Order created a new requirement that agencies must provide the opportunity for bid protests to be decided at a higher level, and an associated automatic stay provision. *See* Exec. Order 12,979 § 1(c), (d). This implicit connection between subsections 1(c) and 1(d) is critical to defendant's position: it assumes that the stay provision in 1(d) is limited in its scope by 1(c), which mandates the availability of protests above the contracting officer level. Consequently, defendant asserts that FAR § 33.103(f)(3), which implements subsection 1(d) of the Executive Order, does not apply to contracting officer protests. Consistent with this theory, defendant argues that FAR § 33.103 applies only to the new level of agency protest created by the Executive Order, whereas contracting officer protests are governed by FAR § 33.102. For support, defendant cites FAR § 33.103(a), which states that "Executive Order 12979 ... establishes policy on agency procurement protests."

The court cannot accept defendant's creative interpretation of these regulations. It distorts the Executive Order and FAR § 33.103 without reason. The plain language of FAR § 33.103(f)(3) controls the outcome of this dispute. It requires an agency to imme-

---

5. There are no Department of Defense FAR Supplement regulations relating to FAR § 33.103.

6. The numbering system of DLA supplemental regulations tracks that of the FAR. DLA's implementing regulations were formerly referred to as the Defense Logistics Agency Regulations, or DLAR. During oral argument, agency counsel informed the court that the DLAR is now obsolete, replaced by regulations promulgated through DLADs. For the purposes of this order, we accept that representation. We refer to DLA regulations so promulgated using the prefix "DLA" to distinguish them from their counterpart FAR provisions.

7. The alternative option permitted by FAR § 33.103(d)(4) is to provide for independent review as an appeal of a contracting officer protest. In that scenario, independent review could only be obtained after first receiving a protest decision from the contracting officer. DLA clause 52.233–9000 clearly rejects this option.

8. The protest was filed on the sixth calendar day after the debriefing. FAR § 33.101, however, defines "day" to extend the deadline by one day if the fifth day falls on a Federal holiday. In this case, the fifth day fell on July 5, 1999, a Federal holiday.

diately suspend performance upon receipt of a timely post-award "protest" unless the agency justifies in writing its decision to continue performance. The definition of "protest" in subpart 33.1 encompasses both contracting officer and higher-level protests. Moreover, FAR § 33.103(f)(3) explicitly states that the suspension remains in effect pending resolution of the agency protest "including any review by an independent higher level official." This language would be superfluous if FAR § 33.103(f)(3) applied only to protests above the contracting officer level.

FAR § 33.103(a) is not dispositive. The reference to Executive Order 12,979 is simply that—a notation that the Executive Order establishes policy in this area. Neither the title to FAR § 33.103, nor the language of its provisions limits its application to one type of agency protest. Nor is defendant's reference to FAR § 33.102 availing. That provision, as its title ("General") suggests, provides general guidance applicable to both GAO and agency protests; it is not a parallel provision to FAR § 33.103 providing regulations specific to contracting officer protests, as defendant suggests.

In sum, there is only one reasonable interpretation of FAR § 33.103: it governs both types of agency protests. Consequently, the automatic stay of FAR § 33.103(f)(3) applies to contracting officer protests. This conclusion is not inconsistent with the language of the Executive Order. That Order is far broader than defendant's reading: it applies generally to agency protests. For example, subsection 1(a) applies solely to disputes at the contracting officer level; and there is no indication that subsections 1(b) or 1(d) should be construed to apply only to protests prescribed in 1(c). Admittedly, subsection 1(c) is narrower because it relates to the establishment of a protest level above the contracting officer, but the limited scope of this subsection does not overflow into adjacent subsections as defendant postulates.

We note that neither DLA's regulations nor contract clause 52.233–9000 are inconsistent with our interpretation of FAR § 33.103. They recognize the existence of two types of agency protests, and the contract clause creates a presumption that agency protests seek review by the contracting officer. Neither the regulations nor the clause limit application of the automatic stay to protests above the contracting officer level. They are consistent with the FAR; it is only DSCP's interpretation of these provisions that is incompatible with FAR § 33.103(f)(3).

In conclusion, we agree with plaintiff that DSCP was required to suspend performance of the contract on July 6, 1999 after receiving plaintiff's protest. Plaintiff has thus prevailed on the merits. Its likelihood of success on this issue is thus conclusive.

2. Irreparable Injury

■ The second factor is whether plaintiff will suffer irreparable harm if the procurement is not enjoined. In the particular circumstances presented here, this inquiry has been resolved by the mandatory language of the automatic stay provision in both the Executive Order and FAR § 33.103(f)(3). Agencies are required to "prohibit award or performance of the contract while a timely filed protest is pending before the agency" regardless of the potential injury to the protester of continued performance, unless the override exception is properly executed by the agency. Exec. Order 12,979 § 1(d); see also FAR § 33.103(f)(3). No showing of irreparable injury is required or even contemplated by either the Executive Order or the FAR; the stay is automatic. Moreover, the override exception provides a means by which an agency may continue contract performance. Any subsequent challenge to the validity of that override would require a showing by the plaintiff of irreparable injury. See Dairy Maid Dairy, Inc. v. United States, 837 F.Supp. 1370, 1381 (E.D.Va.1993). For these reasons, we find that plaintiff's injury is adequately established by the denial of its right to an automatic stay authorized by Executive Order.

3. Balance of Hardships

Under this factor the court must consider whether the balance of hardships tips in the plaintiff's favor. This requires a consideration of the harm to the Government and to the incumbent, USFI, if a preliminary injunction is granted. Mr. Miller testified that an

injunction could hamper the ability of DSCP to provide an adequate supply of food to U.S. forces in Korea. He acknowledged that the agency is not scheduled to place its first order under the contract until September 20, 1999, but stated that an injunction at this early stage of the contract could nevertheless disrupt delivery of some food shipments.

The court accepts Mr. Miller's testimony as a prima facie showing that injunctive relief may cause some harm to the Government. But the court's decision on the balance of hardships is also influenced by the contours of the automatic stay provision. The Executive Order declares that a protester is entitled to the protection of an automatic stay unless the agency issues a written justification that urgent and compelling reasons exist to continue performance, or a written determination that performance is in the best interest of the Government. FAR § 33.103(f)(3) includes a similar exception. The inclusion of this override exception builds consideration of defendant's potential hardship into the regulation. If the Government will suffer undue hardship by suspension of contract performance, it can make either the written justification or written determination permitted by FAR § 33.103(f)(3). In fact, Mr. Miller testified that urgent and compelling reasons exist to justify an override and, consequently, he would recommend execution of an override to his superior if the court deems FAR § 33.103(f)(3) to apply to contracting officer protests. By taking this action, any harm to the Government may be curtailed.

The particular problem faced by DSCP here—that the agency has not yet considered the need for an override because it was operating under the understanding that contracting officer protests do not trigger an automatic stay—can be addressed in the court's formulation of the appropriate injunctive remedy. The court will defer implementation of the preliminary injunction so that the agency has adequate time to consider whether an override is warranted for this contract.

### 4. Public Interest

Finally, we must consider whether the granting of an injunction will be contrary to the public interest. To a large extent, this inquiry too is subsumed within the override exception in FAR § 33.103(f)(3). As a matter of policy, Executive Order 12,979 establishes that protesters are presumptively entitled to receive the benefit of an automatic stay. The President has determined that this stay provision serves the public interest in proper enforcement of the procurement laws and regulations. Undoubtedly, there is also a countervailing public interest in maintaining an adequate supply of provisions to United States armed forces in Korea. This interest is also incorporated into the Executive Order and FAR § 33.103: the second prong of the override exception permits an agency to override the automatic stay if continued performance is in the best interest of the United States. The availability of this exception to a large extent protects the public interest to which Mr. Miller testified. The court may also take this interest into consideration in crafting injunctive relief. Accordingly, the court finds that granting plaintiff's request for a preliminary injunction would not be contrary to the public interest.

### CONCLUSION

For the reasons discussed at the conclusion of oral argument, and as further explained above, we grant plaintiff's request for a preliminary injunction, subject to the conditions described below. Plaintiff has established that the agency erred in treating its protest as outside the coverage of FAR § 33.103(f)(3). The court is mindful, however, that equitable powers "should be exercised in a way which best limits judicial interference in contract procurement." *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed.Cir.1983) (en banc). Defendant has established that, if it had properly construed the protest as subject to an automatic stay, it would, in all likelihood, have immediately overridden the stay. In recognition of the defendant's arguments regarding the potential harm to the future supply of food to U.S. armed forces stationed overseas, the commencement of the injunction will be delayed until noon on August 6, 1999.

Accordingly, the court ORDERS the following:

1. Subject to the conditions set out in this paragraph, effective at noon on August 6, 1999, the Defense Supply Center—Philadelphia is enjoined from proceeding with Contract No. SP0300–98–R–4007 and shall immediately suspend further performance of that contract by USFI, Inc. The injunction will take effect at that time unless either: (1) DSCP has issued a final decision on plaintiff's agency protest; or (2) an agency official at a level above the contracting officer issues, pursuant to FAR 33.103(f)(3), a written justification that urgent and compelling reasons exist to continue performance of the contract, or a written determination that continued contract performance is in the best interest of the Government.

2. If the injunction takes effect on August 6 pursuant to paragraph one, it will expire upon the earlier of the following: (1) DSCP's issuance of a final decision on plaintiff's agency protest; or (2) the issuance by an agency official at a level above the contracting officer of a written justification or determination required by FAR § 33.103(f)(3).

3. If the injunction takes effect on August 6 pursuant to paragraph one, the court deems a security bond to be unnecessary.